146 A.2d 785 (1958)
Maurice COYNE, Maximilian A. Coyne and Leonard A. Hockstader, Willard E. Loeb, Henry L. Heming, Henry A. Cohn, Albert F. Hockstader, Eugene Treuhold, Henry J. Dietrich, Hugh Samson, Peter A. Cohn, Paul M. Kaufmann, Thomas H. Hockstader, H. Austin Kaye, Abraham S. Platt, Herbert H. Weltsman, Burbank C. Young, Walter W. Hess, Jr., General Partners, and Leonard A. Hockstader and Willard E. Loeb, as Executors of the Estate of Louis F. Rothschild, Deceased, Henry C. Schreler, and Charles Neuwirth, Limited Partners, a partnership trading as L. F. Rothschild & Co., Plaintiffs,
v.
PARK & TILFORD DISTILLERS CORPORATION and Schenley Industries, Inc., both Delaware corporations, Defendants.
Court of Chancery of Delaware, New Castle.
December 4, 1958.
Reargument Denied December 17, 1958.
H. James Conaway, Jr., Wilmington, for plaintiffs.
Aaron Finger, of Richards, Layton & Finger, Wilmington, for defendants.
SEITZ, Chancellor.
This is an action by certain equitable stockholders of the corporate defendant, Park & Tilford Distillers Corporation ("Park") to enjoin the consummation of a merger with the other corporate defendant, Schenley Industries, Inc. ("Schenley"). The matter comes before the court on the motions of plaintiffs and defendant Schenley for summary judgment.
Schenley purported to merge Park into Schenley by action taken on March 26, 1958, pursuant to 8 Del.C. § 253. Both Park and Schenley were Delaware corporations and Schenley owned over 95% of Park's stock. By the terms of the merger the minority stockholders of Park were to be paid entirely in cash for their stock interest.
Plaintiffs first contend that the Delaware statutes do not authorize a *786 merger plan where cash rather than stock is exchanged. Defendants reply that the 1957 amendment to § 253 authorizes such an exchange where, as here, the parent owns at least 90% of the stock of the subsidiary.
This is the first case construing the 1957 amendment to § 253. Prior to that amendment, § 253 admittedly provided for a "short merger" procedure only where one corporation was wholly owned by the other. The so-called "short merger" procedure permitted the surviving corporation's board to cause a certificate of merger to be filed without going through the procedure of submitting the action to its stockholders or to the board of directors and stockholders of the wholly owned subsidiary.
On June 5, 1957, § 253 was amended to provide that a corporation owning at least 90% of each class of stock of another corporation could merge that corporation into it by following the procedure just mentioned. By the amendment it was also provided that where the parent corporation does not own all the outstanding stock the resolution of the board of directors of the parent corporation, "shall state the terms and conditions of the merger, including the securities, cash or other consideration to be issued, paid or delivered by the parent corporation upon surrender of each share of the merged corporation now owned by the parent corporation."
Plaintiffs' argument goes like this: 8 Del.C. § 253 even as amended is not a grant of power to merge but is only a simplification of procedure in cases of 90% or greater stock ownership; the power to merge is found in 8 Del.C. § 251 and that section does not authorize (except as to fractional shares) the exchange of cash for stock; consequently, the cash for stock merger plan adopted by Schenley was not authorized by the merger statute.
In support of the first premise in their argument plaintiffs emphasize that in Federal United Corp. v. Havender, 24 Del. Ch. 318, 11 A.2d 331, 337, the Supreme Court of Delaware said that § 251 constituted the grant of power to merge. They point out further that the Court stated with respect to § 253 (before the 1957 amendment) that it was "* * * not a grant of power, but a simplification of procedure with respect to mergers of parent corporations with their wholly-owned subsidiaries." They conclude by arguing that the 1957 amendment merely extended the procedure to 90% (or more) owned subsidiaries.
It is of interest to examine the Havender case. It involved a merger between a parent and a wholly owned subsidiary. What is now § 253 was not in existence at the time the merger in the Havender case took place. That merger had to be justified if at all under § 251. The original § 253 was, however, adopted before the appeal was heard in the Havender case. The Supreme Court was required to consider § 253 because of the argument that the enactment thereof evidenced an understanding that 8 Del.C. § 251 (the general merger statute) did not authorize a merger where there was no exchange of stock. The Supreme Court held that 8 Del.C. § 251 did permit a merger between a parent and a wholly owned subsidiary even though no stock was exchanged. The Court stated that the language in § 251 concerning the conversion of shares related only to the details of merger agreements; that it was general directory language applicable, mutatis mutandis, to all circumstances of mergers. The court, as plaintiffs suggest, stated that § 253 in its then form was nothing more than a simplification of procedure with respect to mergers between a parent and a wholly owned subsidiary. The court therefore concluded in effect that its enactment did not warrant the conclusion that § 251 was not intended to apply to a situation where no stock was issued.
*787 It can be seen that in the Havender case the court stated that § 251 authorized a merger although no shares were exchanged. The court suggested in effect that the language concerning the manner of converting the shares was merely instructive or advisory rather than mandatory. In any event it is clear that such language did not prevent a merger in a case where shares were not converted into shares of the surviving corporation.
Accepting the implications of the language of the Supreme Court in the Havender case, it is not entirely clear to me that plaintiffs' basic premise (which defendants' brief seems to accept) is beyond dispute. By this I mean that it is not absolutely clear that § 251 prevents the exchange of stock for cash even in mergers adopted under that section. Of course it is true that § 251 was amended in 1941 to add to the word "shares" the words "or other securities" (43 Laws of Del., Chap. 132). It is also true that in 1955 it was amended (50 Laws of Del., Chap. 467) to recite that the merger agreement might provide for the payment of cash in lieu of the issuance of fractional shares of the resultant or surviving corporation. Both amendments came after the Havender case. From these amendments it can be argued with some force that it was believed prior thereto that no cash could be paid in exchange for stock.
I have discussed § 251 at some length because of the emphasis placed upon it by plaintiffs' counsel and because it is necessarily related to the evaluation of § 253. However, I believe the problem of construing § 253 can be resolved by assuming without deciding that § 251 (fractional interests aside) does not permit an exchange of cash for shares or other securities. I shall also assume that this situation applied to mergers between parent and wholly owned subsidiaries effectuated pursuant to § 253 as it existed prior to the 1957 amendment.
The issue then is whether the 1957 amendment did authorize payment of cash for shares in mergers covered thereby or whether it merely extended the simplified procedure to mergers where the parent owned at least 90% but less than all of the stock of the subsidiary involved.
I am of the view that the 1957 amendment to § 253 did more than extend the simplified procedure to so-called 90% subsidiaries. I say this for the reasons which I shall now discuss.
First, the language in the amendment that the resolution shall state "the terms and conditions of the merger, including the securities, cash or other consideration to be issued" is worded in the disjunctive, suggesting that cash is to be considered as a separate and independent consideration for the stock to be exchanged. It thus is difficult to say, as do plaintiffs, that the word "cash" only recognizes that there may be situations where the plan provides for cash in lieu of fractional shares as authorized by § 251. Next, the words "or other consideration" in the amendment do not coincide with the terminology in § 251. The quoted language is certainly broader than the words "shares or other securities" found in § 251. It explicitly recognizes the possibility of considerations for the shares of types not embraced within the explicit language of § 251. Thus, it cannot be said that the amendatory language was intended only to constitute a procedural extension, albeit in short form, of the power granted by § 251.
Plaintiffs argue that § 253(d) requires that changes other than those with respect to the parent corporation must be accomplished under § 251. They say that the change in plaintiffs' stock ownership is a change in the subsidiary and must therefore be accomplished under § 251.
Section 253(d) appeared in that section as originally enacted. Insofar as pertinent it provides as follows:

*788 "(d) Any plan of consolidation or merger which requires or contemplates any changes other than those herein specifically authorized with respect to the parent corporation, shall be accomplished under the provisions of sections 251 and 252 of this title."
When § 253, including subparagraph (d), was adopted it referred only to wholly owned subsidiaries. Thus, it could then have been intended to apply only to changes in the parent. As the court indicated in the Havender case, it provided for changes the parent could make in a merger under that section. Any other changes would require action under § 251.
Can it be said that the 1957 amendment calls for an extension of the meaning of subparagraph (d) to make it applicable to a 90% subsidiary? I think not. Subparagraph (d) was adopted originally for the protection of the stockholders of the parent corporation to prevent substantial changes without stockholder approval. A change in the capital structure would be a good example. I do not see how the language could be said to have reference to changes in the rights of the minority stockholders of the subsidiary. Their rights become those set forth in the merger agreement or the appraisal statute.
Plaintiffs say certain language in § 253 (e), which provides for a right of appraisal, tends to show that a cash for shares merger was not contemplated. The possibility of a plan providing cash for shares and the existence of a right to an appraisal in such a case are perfectly compatible.
The legislative grant of power to exchange shares for cash is found in many states. Indeed it is often found to extend far beyond the limited (90% or more) situation covered by § 253. Thus, neither the type nor the scope of power granted is a reason to resolve the construction problem against the grant of such power.
I conclude that by the 1957 amendment to § 253 it was intended to make substantive as well as procedural grants of power. Specifically, I conclude that the language by fair implication authorizes the adoption of a plan by which shares are to be exchanged for cash alone. The present merger is therefore not invalid as involving terms not authorized by the Delaware law.
Plaintiffs next contend that their "proprietary interest represented by their stockholdings in P & T cannot be constitutionally taken away by charter amendment where such proprietary interest is vested even though the corporation and legislature reserve the right to amend the charter". As noted, both the legislature and the defendant whose stock the plaintiffs owned specifically reserved the right to amend the charter in question. The plaintiffs say that they have a constitutional right nevertheless to be protected from being wiped out and destroyed by action under a statutory amendment enacted after they acquired their stock. They say this right is a vested property right identical to the property right involved in Keller v. Wilson & Co., 21 Del.Ch. 391, 190 A. 115.
Preliminarily, I should note that plaintiffs have fallen into the error of assuming that even under § 251 they are entitled either to stock for stock or an appraisal. It may be noted that § 251 as it existed before plaintiffs became stockholders recognized the possibility of a conversion of shares into "shares or other securities". The reference is therefore clearly broader than to stock only. Thus, even under § 251 plaintiffs' shares could have been converted into redeemable bonds. I say this to show that plaintiffs' rights were not solely the alternatives which they suggest.
Let us turn to plaintiffs' basic contention. As I understand it, only those statutory terms in existence at the time they purchased their stock can subsequently be employed in connection with any merger affecting their stock. There are numerous cases in Delaware which show that rights equally as substantial as that claimed by *789 plaintiffs have been changed pursuant to power granted the corporation after the date when such plaintiffs became stockholders.
The case of Keller v. Wilson & Co., above, held that dividend arrearages possessed the attributes of a debt and that a subsequent charter amendment seeking to wipe them out was akin to the destruction of a debt without providing consideration therefor. Here the plaintiffs' investment is not wiped out but is converted either by the terms of the merger or appraisal into what we must assume is its fair monetary value. Thus, there is no confiscation.
When plaintiffs acquired their stock they did not thereby obtain a vested right to prevent the conversion of their stock interest into some other form pursuant to authority thereafter granted the corporation. It follows that § 253 is not unconstitutional as applied to plaintiffs.
In view of my conclusions the other matters argued need not be considered.
I conclude that plaintiffs' motion for summary judgment should be denied and defendant Schenley's motion for summary judgment of dismissal should be granted.
Present order on notice.

On Petition for Reargument
Plaintiffs have moved for reargument or for a new hearing in this matter. The first ground for the motion is that plaintiffs have now found a written explanation for the 1957 amendment which was given to each member of the Legislature. Plaintiffs contend that this explanation makes it clear that it was not intended to authorize cash in exchange for shares in a merger effectuated under 8 Del.C. § 253.
I quote the explanation:
"This amendment makes two basic changes in the present law. First, it permits a foreign parent corporation to merge into itself a Delaware subsidiary. At present this can be done under Sec. 252, but not under Sec. 253. There would seem to be no valid reason why a foreign parent corporation should not have the same rights under Sec. 253 that it has under Sec. 252. Secondly, it permits a merger where the parent owns 90% or more of the stock of the subsidiary. The rights of a minority stockholder of the subsidiary to an appraisal are preserved, as at present. However, the stockholders of the parent corporation would not be entitled to an appraisal in a merger under this section, and there seems to be no valid reason why the stockholders of the parent corporation should be entitled to an appraisal in such circumstances."
Assuming that it is appropriate to consider the explanation in the process of construing the statute, the fact remains that the explanation does not purport to be a complete one. It refers to the "basic" changes made. Whether a provision giving cash rather than stock in exchange for stock is here a basic change is a matter for argument. I say this because the language of the statutory amendment dealing with the exchange of cash for shares seems reasonably clear. This would be so even if we were to pass over the affidavit by the Delaware attorney who drew the amendment which states that the statute was modeled after the New York statute which permits the exchange of cash for stock.
The explanation does state that there is no reason why the parent corporation should not have the same rights under § 253 as it does under § 252. And, it is true that insofar as our problem is concerned, § 252 is the same as § 251. Thus, the "same rights" language tends to give some support to plaintiffs' suggested construction of § 253 as amended. However, I conclude that, although the language is pertinent, it was referring to the right of a foreign parent corporation to merge into *790 itself a Delaware subsidiary. I do not believe the language was used to suggest that the terms of a merger under the amendment were only to be those permitted by § 252.
Assuming, therefore, that the explanation submitted to the Legislature is pertinent, I nevertheless conclude that it did not purport to be an explanation of all the changes contained in the proposed amendment. In any event, in view of the reasonably clear scope of the language of the amendment I conclude that it must control and it permits the exchange of cash for shares.
The other grounds in support of plaintiffs' motion are without merit.
I conclude that plaintiffs' motion for reargument or for a new hearing should be denied.
Present order on notice.