Robert B. KEMP, Jr. and I. Wistar
Morris, III, Plaintiffs,

v.

Sterling W. ANGEL, Richard M. Burdge,
Leonard A. Colavita, Frank F. Jordan,
Harry D. Madonna, Ina Corporation, a
Pennsylvania Corporation, Ina Capital
Corporation, a Delaware Corporation
and Aid, Inc., a Delaware Corporation,
Defendants.

Court of Chancery of Delaware,
New Castle.

Submitted Nov. 14, 1977.

Decided Dec. 7, 1977.

Charles S. Crompton, Jr., Robert K. Payson and James F. Burnett, of Potter, Anderson & Corroon, Wilmington, for plaintiffs.

S. Samuel Arsht, William O. LaMotte, III and William T. Allen, of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendants Ina Capital Corp. and Aid, Inc.

MARVEL, Chancellor.

Plaintiffs, who are admittedly stockholders of the defendant Aid, Inc., sue derivatively for the alleged benefit of such corporation as well as on the alleged behalf of a class of stockholders consisting of persons other than themselves who are holders of Class A common stock of Aid, Inc., excluding, of course, the defendants Ina Corporation and Ina Capital Corporation against which relief is sought.

According to the complaint herein, the individual defendants are directors of Aid, Inc., certain of them being also officers of such corporation, the defendant Burdge also being executive vice president of the defendant Ina Corporation. It is alleged that such board was at all times here relevant dominated by the defendant Ina Corporation by reason of the latter's ownership of more than a majority of the voting stock of Aid, Inc.

The complaint goes on to contend that Ina Corporation, as part of a plan improperly to eliminate plaintiffs and those other stockholders of Aid, Inc. on behalf of whose benefit they sue, caused to be formed a wholly owned subsidiary of Ina Corporation, namely Ina Capital Corporation, for the purpose of furthering the ultimate wrong complained of, namely the merging of Aid, Inc. into Ina Capital Corporation, such proposed transaction constituting the last step in a premeditated course of action designed fraudulently to eliminate the interests of the minority stockholders of Aid, Inc. in their corporation " * * * for a grossly inadequate consideration * * ".

Aid, Inc. is engaged principally, both on its own and through subsidiaries, in the ownership and operation of health care facilities, principally acute care hospitals and skilled nursing homes. Beginning in 1969 and continuing thereafter, according to the complaint, the defendant Ina Corporation, a

broad based financial services company engaged principally in the insurance business as well as in capital investment but also involved in the operation of various health facilities, began to acquire shares of Class A common voting stock of Aid, Inc. As a result Ina Corporation had become the owner of 893,046 such shares of Aid, Inc. as of January 23, 1976, said shares constituting approximately 56% of the outstanding voting shares of such corporation, thereby acquiring the means to dominate and control the business affairs of Aid, Inc.

Next, on January 23, 1976, Ina Corporation made a public offer to purchase any and all of the 702,470 shares of Class A common stock of Aid, Inc. remaining in public hands, the price offered to those tendering such shares being $7.00 per share. As a result of such offer, additional shares of Aid, Inc. were acquired by the offerer in an amount sufficient to increase Ina Corporation's interest in the voting shares of Aid, Inc. to approximately 85%.

Thereafter, in April 1977 Ina Corporation converted 300,000 shares of the Class B [1] common stock of Aid, Inc. held by it into 600,000 shares of Class A common stock of such corporation as a result of which Ina Corporation's ownership of voting shares of such corporation was increased to approximately 90.6%.

On October 12, 1977, it was announced by the management of Ina Corporation that it proposed to merge Aid, Inc. into Ina Corporation's wholly owned subsidiary, Ina Capital Corporation, under the provisions of 8 Del.C. Section 253, the terms of such proposed short form merger providing that if such merger were to be consummated, the result would be that less than 10% minority stockholders of Aid, Inc., would be forcibly eliminated from their corporation in return for which exclusion they would receive the sum of $14.00 for each share of Ina Corporation stock owned by each such stockholder.

The complaint alleges that the scheme complained of, namely the elimination of the interests of the minority stockholders of Aid, Inc. in such fashion was premised on false representations which failed to disclose material facts allegedly germane to such scheme, namely (1) that the aforesaid offer for tenders of stock, followed by a merger, was part of a previously devised plan, the sole purpose of which was to bring about the elimination of the minority stockholders of Aid, Inc. for a grossly inadequate cash payment without serving any good faith business purpose, (2) that defendants falsely represented to minority stockholders of Aid, Inc., in connection with the aforesaid offer for tenders of their stock, that Ina Corporation had no plans at that time to liquidate Aid, Inc., merge it with another corporation, or to make any major change in its business or corporate structure, (3) that in connection with the offer to buy the stock of minority holders of Aid, Inc., in response to tenders of such stock, what were actually the bright prospects of such corporation were falsely presented by thereby concealing the actual facts concerning such prospects, (4) that there was a failure adequately to disclose the intentions of members of the board of directors of Aid, Inc. and of Ina Corporation concerning their proposed intentions in response to the offer for tenders of their Aid, Inc. stock, and (5) that there was a failure adequately to disclose to minority stockholders of Aid, Inc. that it was reasonably foreseeable that the revenue, book value and income of such corporation having increased, were destined to increase further, it being alleged that revenues of Aid, Inc. for 1976 and annualized revenues for 1977 had increased 27% and 70% respectively over those of 1975, that net income of such corporation for 1976 and annualized net income for 1977 had increased 48% and 129% respectively over 1975 and that the book value per share of the Class A stock of such corporation as of December 31, 1975 was $11.73, while as of June 20, 1977, the book value of such

---

1. Such shares having been allegedly acquired in connection with the furnishing of a $30,000,-000 credit line by Ina Corporation to Aid, Inc.

shares of Ina, Inc. had risen to $15.40, an increase of 31%.[2]

Having sought temporary injunctive relief against the consummation of such proposed merger, a temporary restraining order to such effect was entered on November 1, 1977 in order to preserve the status quo, and this is the opinion of the Court on the return of a rule to show cause why a preliminary injunction should not issue in conformity with the provisions of the outstanding restraining order.

In response to plaintiffs' charges that inasmuch as the defendants against whom relief is sought " * * * stand on both sides of the transaction * * * " such insiders " * * * bear the burden of establishing its entire fairness * * * " which must " * * * pass the test of careful scrutiny by the courts * * * " *Sterling v. Mayflower Hotel Corporation,* Del.Supr., 33 Del.Ch. 293, 93 A.2d 107 (1952), the defendants against whom relief is sought stress the anomaly of the build up of Aid, Inc. by Ina Corporation, particularly as a result of the acquisition of the Beverley health facilities following the latter's offer for tenders of Aid, Inc. stock, if, in fact, it was the set intention of the management of Ina Corporation, dating from the time of such offer for tenders of stock, to eliminate the minority stock of Aid, Inc. by merger. Significantly, the price offered for tenders was $7.00 per share while the price offered in the proposed merger now under attack is $14.00 per share. It is also argued that the initial purpose involved in making Aid, Inc. a subsidiary of Ina Corporation was to make it possible for such corporations to file consolidated tax returns with results beneficial to each corporation.

Defendants against whom relief is sought go on to argue that Ina Corporation having recently acquired the properties of a comparable but allegedly stronger hospital chain from Hospital Affiliates, Inc. through merger, involving a tax free exchange and other generous terms, it became economically necessary in order to eliminate overlapping jobs and to prevent overstaffing of its health facilities to complete the merger here in issue, it being additionally pointed out that were Aid, Inc. to continue to operate as a corporate entity that it might possibly be put in a position of being denied in the future the right to corporate opportunities to acquire particular hospital facilities. Insofar as the value of the shares of stock of Aid, Inc. held by its minority stockholders is concerned defendants rely on the allegedly independent Lehman report which fixed an allegedly not only fair but generous value of $14.00 per share for such securities as opposed to the allegedly self-serving McGovern evaluation of plaintiffs which places a value of $44.31 on each minority share of Aid, Inc.

In the leading case as to the purpose and effect of the Delaware short former merger statute, (8 Del.C. Section 253), namely *Stauffer v. Standard Brands, Inc.,* Del. Supr., 41 Del.Ch. 7, 187 A.2d 78 (1962), the Court, although noting that a court of equity has "an ever-present power" to deal with illegality, fraud or overreaching, decided that the dispute before it was concerned only with "a difference of opinion as to value", stating:

"This case involves the so-called 'short merger statute' 8 Del.C. Sec. 253. As recently amended it permits the merger of a ninety-percent owned subsidiary into a parent corporation by the unilateral act of the board of directors of the parent. The statute permits the parent to pay in cash [3] for the minority interests. Each minority stockholder of the subsidiary must be given notice, and, if dissatisfied with the treatment accorded him, may demand an appraisal.

\* \* \* \* \* \*

"In holding that plaintiff's statutory remedy of appraisal was exclusive the Vice Chancellor cited and followed the decisions of the New York Courts in

---

2. Such growth is allegedly a consequence of a so-called Five-Year Plan for Aid, Inc.'s expansion.

3. Such a pay-out is now permissible in a merger consummated under 8 Del.C. Section 251.

*Amella v. Consolidated Edison Co. of New York,* Sup., 73 N.Y.S.2d 263, aff'd 273 App.Div. 775, 75 N.Y.S.2d 513, appeal denied, 297 N.Y. 1031, 78 N.E.2d 868; and *Beloff v. Consolidated Edison Co. of New York,* 300 N.Y. 11, 87 N.E.2d 561. Since our short merger statute is modeled upon that of New York (*Coyne v. Park & Tilford Distillers Corporation,* Del.Ch. [38 Del.Ch. 514], 154 A.2d 893) the Vice Chancellor was clearly correct.

\*     \*     \*     \*     \*     \*

"No illegality or overreaching is shown. The dispute reduces to nothing but a difference of opinion as to value. Indeed it is difficult to imagine a case under the short merger statute in which there could be such actual fraud as would entitle a minority to set aside the merger. This is so because the very purpose of the statute is to provide the parent corporation with a means of eliminating the minority shareholder's interest in the enterprise. Thereafter the former stockholder has only a monetary claim. This power of the parent corporation to eliminate the minority is a complete answer to plaintiff's charge of breach of trust against the directors of Planters of Delaware. As the Vice Chancellor held, they had nothing to do with the merger. It was a unilateral act of the parent."

However, in the recent case of *Singer v. Magnavox Company,* Del.Supr., 380 A.2d 969 (1977), a case concerned with the Delaware long form merger, 8 Del.C. Section 251, the Court held:

"We hold the law to be that a Delaware Court will not be indifferent to the purpose of a merger when a freeze-out of minority stockholders on a cash-out basis is alleged to be its sole purpose. In such a situation, if it is alleged that the purpose is improper because of a fiduciary obligation owed to the minority, the Court is duty-bound to closely examine the allegation when all of the relevant statutory formalities have been satisfied.

\*     \*     \*     \*     \*     \*

"We hold, therefore, that a § 251 merger made for the sole purpose of freezing

out minority stockholders, is an abuse of the corporate process; and the complaint, which so alleges in this suit, states a cause of action for violation of a fiduciary duty for which the Court may grant such relief as it deems appropriate under the circumstances."

Next, in light of the strict standards of fiduciary duty imposed on a majority stockholder of a Delaware corporation by the Supreme Court of Delaware in any intra corporate transaction which involves an alleged diminishing of the rights of minority stockholders in their shares as a result of action proposed to be imposed on such a minority by the majority sitting on both sides of the bargaining table, *Sterling v. Mayflower, supra; Singer v. Magnavox Company, supra,* and *Lynch v. Vickers Energy Corporation,* Del.Supr. (1977), I fail to see how a determination as to whether or not the duty now imposed on a majority stockholder in a merger based on 8 Del.C. Section 253 has been properly carried out requires any less scrutiny by the Trial Court than that called for in a case in which the rights of minority stockholders have been allegedly diminished by a merger based on 8 Del.C. Section 251.

In *Singer v. Magnavox, supra,* the Court expressly limited the effect of its ruling to a merger carried out under the provisions of 8 Del.C. Section 251 stating:

"On the contrary, the fiduciary obligation of the majority to the minority stockholders remains and proof of a purpose, other than such freeze-out, without more will not necessarily discharge it. In such case the Court will scrutinize the circumstances for compliance with the Sterling rule of "entire fairness" and, if it finds a violation thereof, will grant such relief as equity may require. Any statement in Stauffer inconsistent herewith is held inapplicable to a § 251 merger."

While the appeal in *Singer v. Magnavox, supra,* was from an order of dismissal of the complaint for failure to state a cause of action cognizable in a court of equity, the appeal in *Tanzer v. International General*

Industries, Inc., Del.Supr., 379 A.2d 1121 (1977) was from an order of the Chancellor which had denied a motion for the granting of a preliminary injunction against the consummation of a merger accomplished by means of the votes of a majority stockholder for the principal purpose of facilitating long-term debt financing by a majority stockholder and not for the sole purpose of eliminating the interests of minority stockholders in return for cash.

However, notwithstanding the affirmance of the judgment below denying the granting of a preliminary injunction, the case was remanded to the Trial Court for a fairness hearing, the Court stating:

"The Chancellor's opinion, announced at the preliminary injunction stage of this proceeding, discussed fairness only in terms of the price offered for the stock, but that was too restrictive. The test required by *Singer*, which applied the rule of *Sterling*, involves judicial scrutiny for 'entire fairness' as to all aspects of the transaction."

Because of the recent rulings of the Supreme Court of Delaware in the field of fiduciary duty and the fact that a merger once accomplished is difficult to undo, and because there is a reasonable probability that plaintiffs may prevail on final hearing in persuading this Court that the minority stockholders here involved would not be treated fairly were the merger complained of to be consummated, it being only at trial that the Court can give the required careful scrutiny to the testimony adduced subject to objection and cross examination as well as to other evidence offered in an orderly fashion and also test the credibility of witnesses before reaching a determination as to whether or not the transaction under attack is in fact entirely fair to minority stockholders, I conclude that this case must go to trial.

Finally, in light of the broad reach of the recent opinions of the Supreme Court of Delaware, referred to above, defining the fiduciary duty of majority stockholders to the minority, as being over and above statutory requirements, I do not consider that I am bound by the ruling in *Stauffer v. Standard Brands, Inc., supra,* to deny preliminary injunctive relief in an 8 Del.C. Section 253 case such as this and shall enter a preliminary injunction in conformity with the terms of the outstanding restraining order.

An appropriate form of order may be presented on notice.