Thomas C. NAJJAR, Jr., Plaintiff,

v.

ROLAND INTERNATIONAL CORPORA-
TION, a Delaware Corporation, Landro
Corporation, a Delaware Corporation,
Hyatt Corporation, a Delaware Corpora-
tion, Joel Friedland and Gerald Robins,
Defendants.

Court of Chancery of Delaware,
New Castle County.

Submitted April 26, 1978.

Decided May 8, 1978.

George H. Seitz, III, and Steven M. Ge-
varter of Prickett, Ward, Burt & Sanders,
Wilmington, for plaintiff.

Robert K. Payson of Potter, Anderson &
Corroon, Wilmington, for defendants.

BROWN, Vice Chancellor.

▮▮▮▮ Defendants have moved to dismiss
the complaint in this suit for failure to state
a cause of action. Alternatively, as I view
it, they have moved for summary judgment
based upon a supporting factual affidavit.
By agreement of counsel, this ruling deals
only with the motion to dismiss, the consid-
eration of which requires that the well-
pleaded allegations of the complaint must
be accepted as true for this limited purpose.
*Danby v. Osteopathic Hospital Ass'n of Del-
aware,* Del.Ch., 101 A.2d 308 (1953), *aff'd,*
Del.Supr., 104 A.2d 903 (1954).

The motion to dismiss is either premised
upon or necessarily involves the recent deci-
sions of our Supreme Court in *Singer v.
Magnavox Co.,* Del.Supr., 380 A.2d 969
(1977) and *Tanzer v. International General
Industries, Inc.,* Del.Supr., 379 A.2d 1121
(1977) as well as the decision of this Court
in *Kemp v. Angel,* Del.Ch., 381 A.2d 241
(1977) and the earlier decisions in *Stauffer
v. Standard Brands Incorporated,* Del.Ch.,
178 A.2d 311 (1962) *aff'd,* Del.Supr., 187
A.2d 78 (1962). As a starting point it seems
appropriate to note that it is the teaching
of *Singer* that *Stauffer* is still good law
except to the extent that it conflicts with
*Singer.* See 380 A.2d 979 wherein it is
stated that "[a]ccordingly, those cases [in-
cluding *Stauffer*] are inapposite. Any
statement therein which seems to be in
conflict with what is said herein must be
deemed overruled."

As made clear at the outset of *Tanzer,*
the *Singer* decision "held that a merger of a
Delaware corporation caused by a majority
stockholder solely for the purpose of cash-
ing-out minority stockholders is a violation
of a fiduciary duty owed by the former to
the latter." 379 A.2d 1122. In *Singer* the
Supreme Court also approved the following
principle of law at 380 A.2d 979—and did so
in the context of reviewing a motion to
dismiss for failure to state a cause of ac-
tion:

"First, it is within the *responsibility* of an
equity court to *scrutinize* a corporate act
when it is alleged that its purpose vio-

lates the fiduciary duty owed to minority stockholders; . . . ." (Emphasis added.)

In *Tanzer* the Supreme Court held that the Chancellor had been correct in denying a preliminary injunction where the allegations of the complaint charged that it was impermissible under Delaware law for a majority shareholder to freeze-out, or cash-out, the minority shareholders solely for the purpose of benefiting the separate corporate interests of the majority shareholder. In fact the Supreme Court specifically found at 379 A.2d 1125 that

". . . no violation of the rule of *Singer* has been shown, and that [the majority shareholder] has established a *bona fide* purpose for the [cash-out] merger."

Nonetheless, the opinion continued with the following statement:

"This ruling, however, does not terminate the litigation because, given the fiduciary duty owed in any event by IGI [the majority shareholder] to the minority stockholders of Kliklok, the latter *are entitled to a fairness hearing* under *Singer*. The Chancellor's opinion, announced at the preliminary injunction stage of this proceeding, discussed fairness *only in terms of the price offered for the stock, but that was too restrictive*. The test required by *Singer*, which applied the rule of *Sterling*, involves *judicial scrutiny* for 'entire fairness' as to all aspects of the transaction." (Emphasis added.)

In *Kemp v. Angel, supra,* Chancellor Marvel also referred to this latter statement in *Tanzer* and accepted what appears to be its obvious meaning—"it being only at trial that the Court can give the careful scrutiny" to a merger under attack by a complaint which charges that the majority shareholder, in causing the merger, has violated a fiduciary duty owed to the minority. In *Kemp* a preliminary injunction was entered to prevent implementation of the merger pending such a hearing.

Before passing finally to the *Stauffer* decisions, this appears to be an appropriate point at which to note that in both *Singer* and *Tanzer* the merger in question was sought to be effected under 8 *Del.C.* § 251, or the long-form merger statute which requires approval by the boards of directors of the merging corporations, advance notification to all shareholders, and a vote of shareholders thereon. In *Stauffer* and *Kemp*, as well as here, the merger mechanism utilized was that of 8 *Del.C.* § 253, or the short-form merger statute, which provides that a parent corporation owning 90 per cent or more of the outstanding stock of a subsidiary may bring about a merger of the two by simply certifying and filing a resolution of its board of directors to that effect with the appropriate governmental authority, and without prior notice to minority shareholders and without any right in the minority to vote on the matter.

In the *Stauffer* decision in this Court § 253 was analyzed and held to be a legislative enactment designed to permit "the holder of more than ninety per cent of the outstanding stock of a subsidiary . . . the right to pay minority stockholders the value of their shares and thereby eliminate them from continuing participation." 178 A.2d 314. The complaint in that action alleged no fraud by the defendants. Rather it alleged only a breach of fiduciary obligation on the part of the 90 per cent shareholder in failing to determine and offer a fair price for the shares. Under these circumstances it was held that an appraisal under 8 *Del.C.* § 262 was the exclusive remedy.

On appeal this decision was affirmed, the Supreme Court adding as follows at 187 A.2d 80:

"Indeed it is difficult to imagine a case under the short merger statute in which there could be such actual fraud as would entitle a minority to set aside the merger. This is so because the very purpose of the statute is to provide the parent corporation with a means of eliminating the minority shareholder's interest in the enterprise. Thereafter the former stockholder has only a monetary claim."

To complete the precedential picture, the opinion in *Singer* was careful to note at

several places that the Supreme Court was dealing with a § 251 merger. In particular, at 380 A.2d 980 it was stated that:

"Any statement in *Stauffer* inconsistent herewith is held inapplicable to a § 251 merger."

What, then, is the significance of the foregoing with regard to the present motion?

Plaintiff takes the position, with considerable logic, that although there are procedural differences between § 251 and a § 253 merger, the fiduciary duties owed by a majority shareholder to the minority are nonetheless the same. In other words, the degree and extent of the fiduciary obligation imposed on a majority shareholder cannot and should not be made to depend on whether majority's ownership is more or less than 90 per cent of the outstanding shares. By comparison, both § 251 (as was the situation in *Singer*) and § 253 permit cash consideration to be paid to the minority in return for their stock interests. Both sections are silent on the question of whether the merger can only be accomplished for a valid purpose. Nonetheless *Singer* said that a merger involving a payment of cash to the minority under § 251 was not proper where its sole purpose was to eliminate the minority shareholders, and that a complaint which alleged this to be the sole purpose stated a cause of action which required a fairness hearing. The language employed in *Singer* is broad indeed. Again at 380 A.2d 979 the Supreme Court stated that:

"We hold the law to be that a Delaware Court will not be indifferent to the purpose of a merger when a freeze-out of minority stockholders on a cash-out basis is *alleged to be its sole purpose*." (Emphasis added.)

It is urged that this statement applies with equal force to a § 253 merger, and that *Kemp v. Angel* has already so held.

Defendants' position also reveals the presence of logical deduction. They say that it is ludicrous to suggest that the same policy considerations were accepted by the General Assembly in adopting each statute. There are differences between the two which they view to be substantive rather than procedural. As noted earlier, § 251 requires that advance notice of a long-form merger be given to minority shareholders even where its approval is a foregone conclusion due to the extent of the shareholdings of the majority owner. But § 253 requires notice only after a short-form merger has been effected. Under § 251 minority shareholders are entitled to vote on the merger while under § 253 they are not. Under § 251 the board of directors of each corporation must pass upon the terms of the merger while under § 253 all that is required is a resolution of the board of the 90 per cent shareholder. Defendants view these differences to evidence a legislative determination that when the percentage of ownership of a Delaware corporation reaches 90 per cent or more, the law will conclusively presume that the parent has a legitimate and proper purpose in obtaining a 100 per cent ownership by means of a merger, and that the fiduciary duty owed to the minority is satisfied so long as the minority shareholders receive fair value for their shares. As to the practical considerations available to support such a presumption, see the dissenting opinion of Judge Moore in *Green v. Santa Fe Industries, Inc.*, 533 F.2d 1283 (2d Cir. 1976), *rev'd*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977).

At the same time defendants do not contend that a § 253 merger is immune from attack where charges of actual fraud are involved. And this is felt to be a critical point of distinction. They suggest that as long as the majority owner has acquired its 90 per cent in a proper and lawful manner, then the simple act of effecting a short-form merger cannot itself be open to question if the legislative policy they ascribe to § 253 is to mean anything. If, however, the charge is that the majority shareholder engaged in a fraudulent scheme or improper conduct in acquiring its 90 percent interest for the sole purpose of eliminating the remaining shareholders, then defendants concede that a cause of action may be stated. They say that this distinction was recognized by the Supreme Court in *Stauffer*, see 187 A.2d 80, and was specifically enforced

in *Braasch v. Goldschmidt,* Del.Ch., 199 A.2d 760 (1964) in which a motion to dismiss for failure to state a claim in a § 253 context was denied for this very reason. They point out with equal accuracy that allegations of a fraudulent scheme to acquire the 90 per cent status formed the basis of the complaint in *Kemp v. Angel,* thus making it potentially distinguishable from the meaning plaintiff would attribute to it.

In short, defendants argue that *Singer* and *Tanzer* have not altered the effect of *Stauffer v. Standard Brands, Inc.,* where, as there, a complaint alleges only that the majority shareholder breached its fiduciary duty to the minority by effecting a § 253 merger without paying the minority fair value for their shares. Presumably they would interpret *Singer's* statement that "[a]ny statement in *Stauffer* inconsistent herewith is held inapplicable to a § 251 merger" to mean that *Stauffer* still applies with full force to a § 253 merger where a complaint attacking it alleges no more than did the complaint in *Stauffer.* They point out that the complaint here, when stripped of its rhetoric and conclusory allegations of oppressive treatment of the minority, seeks only to recover for the plaintiff, and the class of all other minority shareholders which he seeks to represent, monetary damages measured by the difference between what the minority was paid for their shares and the amount which plaintiff feels the shares were truly worth. Unlike *Stauffer,* the complaint here seeks money damages only and contains no prayer to set aside the merger.

The able presentations of counsel make the decision difficult indeed. However, under the present status of the law I am forced to conclude that the position of the plaintiff is the correct one. I arrive at this conclusion for the following reasons.

First, despite the seeming logic of defendants' interpretation of the surviving force of *Stauffer,* the majority in *Singer,* in discussing the *Stauffer* decision, summed up as follows at 380 A.2d 978:

"We do not read [that] decision as approving a merger accomplished [under § 253] solely to freeze-out the minority without a valid business purpose."

Secondly, in *Kemp v. Angel* the Chancellor made the following significant observation at 381 A.2d 244:

"Next, in light of the strict standards of fiduciary duty imposed on a majority stockholder of a Delaware corporation by the Supreme Court of Delaware in any intra corporate transaction which involves an alleged diminishing of the rights of minority stockholders . . . I fail to see how a determination as to whether or not the duty now imposed on a majority stockholder in a merger based on 8 *Del.C.* Section 253 has been properly carried out requires any less scrutiny by the Trial Court than that called for in a case in which the rights of minority stockholders have been allegedly diminished by a merger based on 8 *Del.C.* Section 251."

Finally, I make note of what I cannot help but conclude to be a necessary outgrowth of *Singer* and *Tanzer,* even though the point was not argued by the parties. *Singer* was before the courts on a motion to dismiss for failure to state a cause of action. The ultimate decision held that the complaint did state a claim by alleging that the merger had no other purpose than to freeze-out the minority shareholders of The Magnavox Company. In its decision the Supreme Court concluded (as I have previously emphasized herein) that this Court has a responsibility to scrutinize a corporate merger "when it is alleged" that it violates the fiduciary duty owed to minority shareholders and also that Delaware courts will not be indifferent to the purpose of a merger when a freeze-out of the minority "is alleged to be its sole purpose." For these reasons it was held that a fairness hearing was required and that the motion to dismiss for failure to state a claim was without merit.

In *Tanzer,* even though it was found that the majority shareholder had established a *bona fide* purpose for the merger and, con-

sequently, that the freezing-out of the minority was not its sole purpose, and even though no violation of *Singer* had been shown at the preliminary injunction stage, it was nevertheless held that the plaintiff minority shareholders were "entitled to a fairness hearing" in this Court under the *Singer* decision, and that at such hearing "fairness" was not to be restricted to the price offered for the minority's stock.

From this I cannot help but get the impression that when a complaint attacking a merger "alleges" that its sole purpose is to eliminate minority interests, such a complaint is now virtually immune from a motion to dismiss for failure to state a cause of action, especially when the basis for such a motion would be, as here, that the plaintiff is only complaining about the amount paid for the minority shares.

For these reasons the motion to dismiss is denied. An appropriate form of order may be presented.