ROLAND INTERNATIONAL CORPORA-
TION, Landro Corporation, and Hyatt
Corporation, Defendants, Appellants,

v.

Thomas C. NAJJAR, Jr., Plaintiff,
Appellee.

Supreme Court of Delaware.

Submitted Dec. 19, 1978.

Decided Aug. 6, 1979.

Rehearing Denied Oct. 31, 1979.

Charles S. Crompton, Jr., Robert K. Payson and James F. Burnett, of Potter Anderson & Corroon, Wilmington, and Robert L. Laufer and Helen Davis Chaitman, of Paul, Weiss, Rifkind, Wharton & Garrison, New York City, of counsel, for defendants, appellants.

Steven J. Rothschild, George H. Seitz, III, and Steven M. Gevarter, of Prickett, Ward, Burt & Sanders, Wilmington, and Charles L. Denaburg, of Denaburg, Schoel, Meyerson & Ogle, Birmingham, Ala., of counsel, for plaintiff, appellee.

Before HERRMANN, C. J., DUFFY, McNEILLY, QUILLEN and HORSEY, JJ., constituting the Court en Banc.

DUFFY, Justice (for the majority):

In this appeal, we consider whether the rule announced in *Singer v. Magnavox Co.*, Del.Supr., 380 A.2d 969 (1977), applies to a short-form merger under the Delaware Corporation Law, 8 *Del.C.* § 253. We hold that it does.

I

This is a class action brought by a minority stockholder of Roland International Corporation (Roland), a Delaware corporation, for money damages allegedly resulting from a breach of fiduciary duty owed to minority stockholders in connection with a merger between Roland and Landro Corporation (Landro), also a Delaware corporation. There was no prayer for other relief.

■ The pertinent facts are these: [1]

Hyatt Corporation, the individual defendants, Joel Friedland and Gerald Robins (neither of whom has been served with process), and others collectively owned 97.6% of the outstanding shares of Roland. They caused Landro to be chartered for the purpose of merging with Roland. On May 9, 1977, the Hyatt Corporation, Friedland, Robins and the other owners of the 97.6% block of Roland common contributed their shares to Landro in exchange for a like number of shares of Landro common. As a result of that exchange, the contributing shareholders held all outstanding Landro shares. The Landro directors are also the directors of Roland.

Thereafter, the Delaware statutory formalities for a short-form merger were fulfilled. The Board of Directors of Landro and its stockholders approved a resolution authorizing the merger and providing that, on the effective date of the merger, each share of Roland common, other than the shares owned by Landro, would be converted into a right to receive $5.25 in cash. This "cash-out" affected all 329 public shareholders of Roland (who owned a total of 76,659 shares), leaving them with no further participation rights in Roland or in Landro, this being the sole purpose of the merger. The public shareholders were informed that they could either accept the $5.25 in cash offered for each Roland share held, or seek an appraisal under 8 *Del.C.* § 262.

---

1. Because the appeal is from an order denying a motion to dismiss the complaint for failure to state a claim upon which relief can be granted, the facts alleged in the complaint are taken as true. *Laventhol, Krekstein, Horwath & Horwath v. Tuckman*, Del.Supr., 372 A.2d 168 (1976).

■ Plaintiff then filed this action in the Court of Chancery, and Roland and Hyatt joined in a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. The Court denied the motion, 387 *A.2d* 709 (Del.Ch.1978), and this appeal followed.[2]

In analyzing the issues, the Court of Chancery focused on *Singer* and its progeny,[3] and denied the motion for three reasons: first, the Vice Chancellor found language in *Singer* directly applicable to a § 253 merger; second, in *Kemp* the Court of Chancery had applied *Singer* principles to a § 253 merger; and, third, the Vice Chancellor interpreted this Court's decisions in *Singer* and *Tanzer* as making a complaint like this one "virtually immune from a motion to dismiss for failure to state a cause of action . . . ." 387 *A.2d* at 713.

## II

We begin our review by returning to *Singer*. In that case, this Court reaffirmed the long settled Delaware law of fiduciary duty which governs the relationship between majority and minority shareholders and, applying it to a merger under 8 *Del.C.* § 251, we said:

"We hold the law to be that a Delaware Court will not be indifferent to the purpose of a merger when a freeze-out of minority stockholders on a cash-out basis is alleged to be its sole purpose. In such a situation, if it is alleged that the purpose is improper because of the fiduciary obligation owed to the minority, the Court is duty-bound to closely examine that allegation even when all of the relevant statutory formalities have been satisfied."

380 *A.2d* at 979.

■ The unmistakable focus in *Singer* was on the law of fiduciary duty. See 380 *A.2d* at 976. Such a duty is owed by the majority stockholders (who have the power to control corporate property and, indeed, corporate destiny) to the minority stockholders of the corporation when dealing with the latter's property. It may not be circumvented by full compliance with the procedures permitted under and required by the corporation statutes, nor is it discharged by remitting minority shareholders to a statutory appraisal remedy (often based upon the status of the market and the elements of an appraisal), the timing of which is entirely within the control of the majority. The fiduciary duty is violated when those who control a corporation's voting machinery use that power to "cash out" minority shareholders, that is, to exclude them from continued participation in the corporate life, for no reason other than to eliminate them.[4]

■ In *Tanzer*, we held that even when a parent corporation has a *bona fide* purpose for merging with its subsidiary, the minority shareholders of the subsidiary are entitled to a judicial review for "entire fairness" as to all aspects of the transaction.

---

2. The appeal is thus from an interlocutory order; leave to appeal was given by the Trial Court, and the appeal was accepted by this Court. See Supreme Court Rule 42.

3. See, e. g., *Tanzer v. International General Industries*, Del.Supr., 379 A.2d 1121 (1977); *Young v. Valhi, Inc.*, Del.Ch., 382 A.2d 1372 (1978); and *Kemp v. Angel*, Del.Ch., 381 A.2d 241 (1977).

4. Some commentators have suggested that the standard of review should vary according to the type of merger involved. Cf. *Singer v. Magnavox and Cash Take-out Mergers*, 64 Va. L.Rev. 1101, 1113 (1978); Brudney and Chirelstein, *A Restatement of Corporate Freezeouts*, 87 Yale L.J. 1354, 1359 (1978). While such a pragmatic approach has much to commend it in maintaining corporate flexibility, in our judgment, the duty involved should not be dependent upon the type of merger. When and how the majority stockholder gained that position may be relevant in determining the *bona fides* of a business purpose when a freeze-out merger is challenged, or it may be helpful at the remedy stage, but such facts are not the measure of the majority's duty to the minority. Our law applies to all majority shareholders, no matter how, nor how recently such majority was obtained. The basic concepts underlying the fiduciary duty—that corporate property belongs (in the equitable sense) to *all* shareholders (not just majority shareholders), and that those in control of the corporate machinery are accountable to all owners of the corporate property—do not suggest otherwise.

379 *A.2d* at 1125. In other words, the fiduciary duty exists even if the majority has a *bona fide* purpose for eliminating the minority: in that case, the duty of the majority is to treat the minority fairly.

## A.

In this appeal, defendants contend that § 253 presumes a proper purpose for the merger, thus obviating the need for judicial examination as to purpose. In addition, they contend that the sole issue in the litigation is the value of plaintiff's shares, and, as to that, the appraisal remedy, 8 *Del.C.* § 262, is available, adequate and. exclusive, thus eliminating any need for judicial examination as to fairness.

**5.** *Singer* and *Tanzer* have evoked a significant amount of comment and criticism. See, e. g., *Corporations—Going Private*, 1978 Annual Survey of American Law, p. 279; *Singer v. Magnavox Co.*, 66 Cal.L.Rev. 118 (1978); 46 *Geo.Wash.L.Rev.* 877 (1978); *Singer v. Magnavox and Cash Take-out Mergers*, 64 Va.L.Rev. supra; *What Constitutes a Valid Purpose for a Merger?*, 51 Temple Law Quarterly 852 (1978); Brudney and Chirelstein, *A Restatement of Corporate Freezeouts*, 87 Yale L.J. supra; F. O'Neal, *Squeeze-Outs of Minority Shareholders* (Supp.1978).

**6.** 8 *Del.C.* § 253 provides in part as follows:
"(a) In any case in which at least 90% of the outstanding shares of each class of the stock of a corporation or corporations is owned by another corporation and 1 of the corporations is a corporation of this State and the other or others are corporations of this State, . . . the corporation having such stock ownership may either merge the other corporation or corporations into itself and assume all of its or their obligations, or merge itself, or itself and 1 or more of such other corporations, into 1 of the other corporations by executing, acknowledging and filing, in accordance with § 103 of this title, a certificate of such ownership and merger setting forth a copy of the resolution of its board of directors to so merge and the date of the adoption; provided, however, that in case the parent corporation shall not own all the outstanding stock of all the subsidiary corporations, parties to a merger as aforesaid, the resolution of the board of directors of the parent corporation shall state the terms and conditions of the merger, including the securities, cash, property, or rights to be issued, paid, delivered or granted by the surviving corporation upon surrender of each share of the subsidiary corporation or corporations not owned by the parent corporation. If the parent corpo-

It is clear to us that defendants' contentions reduce to a single question: are the principles announced in *Singer* (and *Tanzer*) with respect to § 251 mergers to be applied to § 253 mergers?[5]

## B.

■ We first consider whether there are such differences between § 251 and § 253 as to require the application of a different rule of law when a § 253 merger is accomplished. For a pre-*Singer* discussion of the short-form merger statute, see Folk, *The Delaware General Corporation Law*, at 351–354.

Defendants contend that § 253 differs from § 251 substantively as well as procedurally.[6] Specifically, defendants say that,

ration be not the surviving corporation, the resolution shall include provision for the pro rata issuance of stock of the surviving corporation to the holders of the stock of the parent corporation on surrender of the certificates therefor, and the certificate of ownership and merger shall state that the proposed merger has been approved by a majority of the outstanding stock of the parent corporation entitled to vote thereon at a meeting duly called and held after 20 days notice of the purpose of the meeting mailed to each such stockholder at his address as it appears on the records of the corporation. A certified copy of the certificate shall be recorded in the office of the recorder of the county in this State in which the registered office of each constituent corporation which is a corporation of this State is located.

(b) If the surviving corporation is a Delaware corporation, it may change its corporate name by the inclusion of a provision to that effect in the resolution of merger adopted by the directors of the parent corporation and set forth in the certificate of ownership and merger, and upon the effective date of the merger, the name of the corporation shall be so changed.

(c) The provisions of § 251(d) of this title shall apply to a merger under this section, . . . .. Any merger which effects any changes other than those authorized by this section or made applicable by this subsection shall be accomplished under the provisions of § 251 or § 252 of this title. The provisions of § 262 of this title shall not apply to any merger effected under this section, except as provided in subsection (d) of this section.

(d) In the event all of the stock of a subsidiary Delaware corporation party to a merger effected under this section is not owned by the parent corporation immediately prior to the

under *Singer*, a parent corporation must show a *bona fide* purpose for effecting a long-form merger with a subsidiary, but that § 253 conclusively presumes a proper purpose for a short-form merger. Any further inquiry by the courts, defendants continue, is unwarranted.[7]

That argument misses the point of *Singer*. The law of fiduciary duty, on which *Singer* is based, arises not from the operation of § 251 but independent of it. Indeed, *Singer* presupposes full compliance with the terms of § 251, and its impact begins at that point. As we have attempted to make plain, the duty arises from long-standing principles of equity and is superimposed on many sections of the Corporation Law, including, we think, § 253. Differences between § 251 and § 253, in terminology or in procedure, do not alter the duty which exists apart from the procedures permitted by the Statutes.

The short form permitted by § 253 does simplify the steps necessary to effect a merger, and does give a parent corporation some certainty as to result and control as to timing. But, we find nothing magic about a 90% ownership of outstanding shares which would eliminate the fiduciary duty owed by the majority to the minority. That duty existed in *Singer*, when the parent corporation owned about 84% of the target corporation's stock. Clearly, the same rule would have applied if the parent had held 89% of the shares. And surely it does not make sense to say that the duty is reduced or is non-existent because a parent corporation owns an additional one or two percent of the outstanding shares, that is, 90% or more. In fact, the need to recognize and enforce such equitable principles is probably greater when the size of the minority is smaller. To state it another way, the short cut to merger afforded by § 253

may not be used to short-circuit the law of fiduciary duty. Cf. 46 *Geo.Wash.L.Rev.* supra at 892. The duty of the majority is not diluted as control is strengthened nor is the right of the minority determined by how small it is. Thus the fiduciary obligation owed in the context of a merger, be it long or short, is singular, and falls alike on those who control "at least 90% of the outstanding shares," § 253, and those who control a majority but less than 90%, § 251.

### C.

Defendants also argue that, by eliminating participation by stockholders and/or directors of a corporation, of which at least 90% is owned by another, § 253 also eliminates the right of minority stockholders to exercise any view on the merger. Citing *Stauffer v. Standard Brands, Inc.*, 41 Del.Ch. 7, 187 A.2d 78 (1962), defendants say that the very purpose of § 253 is to give the 90% owner a tool for eliminating the minority interest in the enterprise.

██ As to *Stauffer*, we agree that the purpose of § 253 is to provide the parent with a means of eliminating minority shareholders in the subsidiary but, as we observed in *Singer*, we did "not read the decision [*Stauffer*] as approving a merger accomplished solely to freeze-out the minority without a valid business purpose." 380 *A.2d* at 978. We held that any statement in *Stauffer* inconsistent with the principles restated in *Singer* was inapplicable to a § 251 merger. 380 *A.2d* at 980. Here, we hold that the principles announced in *Singer* with respect to a § 251 merger apply to a § 253 merger. It follows that any statement in *Stauffer* inconsistent with that holding is overruled.

---

merger, the stockholders of the subsidiary Delaware corporation party to the merger shall have appraisal rights and the surviving corporation shall comply with paragraph (2) of subsection (b) of § 262 of this title. Thereafter, the surviving corporation and the stockholders shall have such rights and duties and shall follow the procedures set forth in subsections (c) to (j), inclusive, of § 262 of this title. . . ."

7. Defendants concede that a proper purpose would not be conclusively presumed if the majority had attained 90% ownership by illegal or fraudulent means. Cf. *Kemp v. Angel* supra; *Braasch v. Goldschmidt*, 41 Del.Ch. 519, 199 A.2d 760 (1964).

### III

Turning now to the application of those principles, the complaint alleges that the short-form merger between Roland and Landro had no purpose other than to eliminate the public shareholders from continued participation in the enterprise. Defendants contend, not that there was a proper purpose for the merger, but that § 253 creates a presumption that there was such a purpose. We have determined such argument to be without merit, overruling anything in *Stauffer* to the contrary, and so, to this extent, the complaint does state a cause of action for breach of fiduciary duty.

■ It should be noted that the merger under scrutiny here is of a kind different from those involved in *Singer* and *Tanzer.* In *Singer*, the merger followed a takeover by a previously unrelated corporation. *Tanzer* considered a merger of two affiliated corporations. The merger described in the case at bar, however, presents a classic "going private" transaction, with the majority having complete control over the timing of the "squeeze play" on the public stockholders—a timing conceivably selected to favor the majority only, based upon the status of the market and the elements of an appraisal. According to the complaint, the merger was simply the means chosen to eliminate the comparatively few public shareholders of Roland. It has been argued with persuasion that this type of merger calls for the strictest observance of the law of fiduciary duty. 89 *Yale L.J.* at 1365. We agree.

■ The majority shareholders must, under our holding establish a proper purpose for the short-form merger as a threshold requirement. But, the complaint also alleges that the terms of the merger were "grossly inadequate and unfair" to the public shareholders of Roland. It is clear from both *Singer* and *Tanzer* that the law of fiduciary duty requires "entire fairness as to all aspects" of a merger effected by majority shareholders and, in this respect, the complaint also states a cause of action.

In sum, we cannot say, at this time, that there is not a reasonably conceivable set of circumstances susceptible of proof under the complaint. *Spence v. Funk*, Del.Supr., 396 A.2d 967 (1978); *Penn Mart Realty Company v. Becker*, Del.Ch., 298 A.2d 349 (1972). Therefore, the Vice Chancellor properly denied defendants' motion to dismiss.

Affirmed.

QUILLEN, Justice, dissenting:

With deference and respect for the Court's decision and the majority opinion, I, with regret, find it necessary to express a different view. My regret stems not only from the obligation of the appellate process, but also from the fear that this separate view, so devoid of absolutes, will at best be a whimper in an area of the law that properly commands public scrutiny.

No issue is taken with the broad principles. Majority stockholders do "owe their corporation and its minority shareholders a fiduciary obligation of honesty, loyalty, good faith and fairness."[1] The duty does arise, as the majority opinion here notes, "from long-standing principles of equity" and the application of such principles is both sound and commendable.[2] And a Delaware Court should "not be indifferent to

1. *Singer v. Magnavox Co.*, Del.Supr., 380 A.2d 969, 977 (1977).

2. For a helpful general discussion which concisely gives the historical precedent for *Singer*, see Rothschild, *Going Private and Singer: A Balanced State Law Standard for Fiduciaries*, Del.Corp.Law Seminar 2–16–79, scheduled for fall publication in the Securities Regulation Law Journal and 4 Del.J.Corp.Law (1979). The *Singer* opinion uniquely dramatized the fiduciary duty of the majority stockholder in a merg-

er context and was clearly a landmark case of reconciliation in Delaware corporate law. But, in some instances it can be a mistake to permit an equitable decision in a given case to become a rule of equitable law which fails to consider fully the factual and procedural variations of subsequent cases. "An opinion in a particular case, founded on its special circumstances is not applicable to cases under circumstances essentially different." *Brooks v. Marbury*, 24 U.S. (11 Wheat.) 78, 91, 6 L.Ed. 423, 426 (1826).

the purpose of a merger when a freeze-out of minority stockholders on a cash-out basis is alleged to be its sole purpose." [3]

But, as I perceive it, the Court is tending to flesh out broad equitable principles into rules and formats that automatically hold mergers "made for the sole purpose of freezing out minority stockholders [are] an abuse of the corporate process",[4] that anticipate and delineate matters "reserved for another day",[5] that require "fairness hearing[s]" without express reference to any specific allegations,[6] and that establish, as the majority opinion illustrates here, preconceived "threshold requirement[s]". The very uniqueness of equity is its ability to react on a case-by-case basis without the rigidity of pigeonholes. It is a mistake to "[confound] equity jurisdiction . . . with the right of the plaintiff to maintain

3. *Singer v. Magnavox Co., supra*, 380 A.2d at 979. The careful phrasing quoted is useful in setting the context of the opinion. Frequently, broad language in corporate cases is extracted from limited contexts and misapplied. See *Bruce v. E. L. Bruce Company*, 40 Del.Ch. 80, 174 A.2d 29, 30 (1961). See also Arsht, *The Business Judgment Rule in Delaware and Its Applicability to the Fiduciary Responsibilities of Directors, Officers and Controlling Stockholders*, Del.Corp.Law Seminar 2–15–79, 4 Del. J.Corp.Law (1979).

4. *Singer v. Magnavox Co., supra*, 380 A.2d at 980. As I understand it, the minority stockholder's right is based on the cash-out breach of fiduciary duty and not on a vested property right. As has been noted, "a stockholder in any merged corporation who receives stock in the continuing enterprise obviously has the form of his investment changed from what it was prior to the merger." Terrell and Ranney-Marinelli, *What Constitutes a Valid Purpose for a Merger?*, 51 Temple Law Quarterly 852, 862–863 (1978). See also *Coyne v. Park & Tilford Distillers Corp.*, 37 Del.Ch. 558, 146 A.2d 785, 789 (1958), aff'd 38 Del.Ch. 514, 154 A.2d 893 (1959), and McBride, *Delaware Corporate Law: Judicial Scrutiny of Mergers—The Aftermath of Singer v. The Magnavox Company*, 33 The Business Lawyer 2231, 2234–2235 (1978). While the "purpose" of corporate actions should not be foreclosed from equitable inquiry, the limitations of a "purpose" inquiry should also receive consideration. See the dissenting opinion of Judge Moore in *Green v. Santa Fe Industries*, 2d Cir., 533 F.2d 1283, 1299–1308 (1976), rev'd 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). See also Borden, *Going Private-Old Tort, New Tort or No Tort?*, 49 N.Y.U.L.Rev. 987, 1001–1002 (1974) for notation of circumstances where take-outs are advantageous to the minority. The view taken in this separate opinion makes it unnecessary for me to consider the discussion of purpose under the short merger statute set forth in *Stauffer v. Standard Brands, Inc.*, 41 Del.Ch. 7, 187 A.2d 78, 80 (1962).

5. *Tanzer v. International General Industries, Inc.*, Del.Supr., 379 A.2d 1121, 1122 (1977). The *Tanzer* case arose on an appeal from a denial of a preliminary injunction where the complaint alleged that the "sole purpose of the merger was to benefit [the parent majority stockholder] by facilitating [its] future long range debt financing." Review could have been limited to an "abuse of discretion" standard. *Gimbel v. Signal Companies*, Del.Supr., 316 A.2d 619, 620 (1974). But perhaps the expanded review was useful in light of the newness of *Singer* and the then Chancellor's opinion in the Court below. See *Recent Developments in Delaware Corporate Law*, 3 Del.J. Corp.Law 19, 71–74 (1977).

6. *Tanzer v. International General Industries, Inc., supra*, 379 A.2d at 1125. It is difficult for me to abstractly scrutinize for "'entire fairness' as to all aspects of the transaction." One commentator has noted: "'Entire fairness', as used in *Singer* and *Tanzer*, remains a somewhat elusive concept. The phrase was derived from an earlier case, *Sterling v. Mayflower Hotel Corp.*, 33 Del.Ch. 20, 93 A.2d 107 (1952), where the Delaware Supreme Court rejected a challenge to a parent-subsidiary stock-for-stock merger upon determining that the consideration being paid to the minority was adequate by standards of valuation used in statutory appraisal actions. However, in *Singer* and *Tanzer*, the term was utilized in a context where the Court was holding that appraisal was not an adequate or exclusive remedy." Drexler, *Recent Developments: Fiduciary Duties to Minority Stockholders*, Proceedings of the 17th Annual Corporate Counsel Institute, Northwestern University School of Law, Chicago, Illinois, October 5, 1978, pp. 9–12. Fairness can perhaps usefully "be analyzed as subsuming two separate concepts: fair dealing and fair price." Nathan and Shapiro, *Legal Standard of Fairness of Merger Terms Under Delaware Law*, 2 Del.J.Corp.Law 44, 46 (1977). Even then some fair dealing can at least frequently be related to price. In *Sterling*, the issue was stated in terms of "substantial equivalent in value". 93 A.2d at 110. It should perhaps be noted that on remand summary judgment was granted for the defendants in the *Tanzer* case. *Tanzer v. International General Industries, Inc.*, Del.Ch., 402 A.2d 382 (1979). The matter is again on appeal. No. 155, 1979.

his suit, and to obtain the equitable relief." [7]

I do not minimize the fiduciary problem so forthrightly faced by this Court in the *Singer* case. Rather, tribute should be paid to its enormity. It arises in various context procedurally (motion for preliminary injunction, motion to dismiss, motion for summary judgment, trial, appeal), factually (history of relationships, needs of all minority stockholders, needs of majority stockholder, the temporal economics—both corporately and generally, the rights of third parties), and legally (type of merger, class action, statutory remedy, relief sought, allegations made). But to say there is a fiduciary duty "only begins analysis" and "gives direction to further inquiry." [8] It should not be the trigger to a series of mechanics more akin to legislative detail and administrative. regulation than equitable review. The inquiry should be as long, or as short, as equity requires.

In this case, the inquiry should be short. On June 20, 1977, the date the merger became effective, the statutorily required notice was sent to the minority stockholders informing them of the short form merger of Landro Corporation into Roland International Corporation which cashed out the Roland stockholders other than Landro. On December 28, 1977, well over five months after the 20 days the statute gives a stockholder to demand an appraisal,[9] the plaintiff filed this class action seeking compensatory damages.[10]

While the complaint does give the necessary *Singer* recital that the "sole purpose was to enable Landro to obtain 100% ownership of the business and assets of Roland at a price which was grossly inadequate and unfair to its shareholders", the plaintiff does not seek to continue his equitable participation in Roland or injunctive relief of any kind. He wants to be cashed out. The whole thrust of the complaint is directed to an alleged "gross and fraudulently inadequate price".[11]

In short, the plaintiff comes to Court more than five months after the required notice to the corporation under the statutorily established appraisal procedures and says he wants more money for his shares and the privilege of subjecting the defendants to a separate class action. He does not specifically allege or even argue to any precision why the statutory appraisal proce-

---

7. 1 *Pomeroy's Equity Jurisprudence* (5th Ed.) § 131, p. 180, "The discretionary exercise or nonexercise of equitable . . . jurisdiction . . . in one case is not precedent in another case where the facts differ." *Cook v. Fortson*, 329 U.S. 675, 678, 67 S.Ct. 21, 22, 91 L.Ed. 596, 598 (1946).

8. Mr. Justice Frankfurter in *Securities and Exchange Commission v. Chenery Corp.*, 318 U.S. 80, 86, 63 S.Ct. 454, 458, 87 L.Ed. 626, 632 (1943).

9. 8 *Del.C.* § 262(b)(2). A stockholder who demands an appraisal has 120 days from the date of the merger to file a petition in the Court of Chancery. 8 *DelC.* § 262(c). An appraisal proceeding is akin to a class action. See 8 *Del.C.* § 262(c) and (h).

10. Although not in the complaint, and therefore not before the Court on the instant appeal from the denial of a motion to dismiss the complaint, the record includes an affidavit showing that on June 20, 1977 there were 329 public stockholders owning 76,659 shares (2.4% of Roland's common). Of these, 4 stockholders owning 2,030 shares wrote to demand an ap-

praisal. One later surrendered his shares and one filed a petition on October 17, 1977 in the Court of Chancery seeking appraisal pursuant to 8 *Del.C.* § 262(c). *Petition of Joseph K. Mikita*, Civil Action No. 5439.

11. While, in light of the relief sought, it does not appear to me to warrant discussion here, it should perhaps be noted that the complaint alleges that an uncertain condition as to fair value was fostered by accounting practices evidently permitted as a result of delisting of Roland's stock from the American Stock Exchange, that some emphasis is placed on current increases in sales and potential earnings and profits, that an unasserted claim exists against directors and officers as a result of a 1974 loan and that, in the context of a change in accounting methods, certain normal corporate reports, evidently regular when prepared, were misleading to stockholders in the merger setting. It does not allege that any of this information was unavailable to and unknown by the plaintiff at the time of the required merger notice. In any event, the only issue raised is value.

dure is inadequate in this case.[12]  In my opinion, he has failed to state a claim upon which equitable relief can be granted and the Court below erred in not granting the motion to that effect.

I respectfully dissent.

---

**12.** At oral argument, counsel in broad terms noted the one statutory limitation, 8 *Del.C.* § 262(f), on valuation ["fair value exclusive of any element of value arising from the accomplishment or expectation of the merger"] and recited generally evidence difficulties as to post merger earnings, the possibility of a premium payment and the extension of the fairness doctrine beyond price.  None of these items is persuasive grounds for the inadequacy of the remedy in the current context. *Tri-Continental Corp. v. Battye*, 31 Del.Ch. 523, 74 A.2d 71, 72 (1950).  There appears here to be no desirable reason to create an unnecessary damage forum, particularly now in light of recent efforts to promote the adequacy of the statutory remedy.  See 60 *Del.Laws*, Ch. 371 (1976) and *Raab v. Villager Indus. Inc.*, Del.Supr., 355 A.2d 888 (1976), cert. den. 429 U.S. 853, 97 S.Ct. 147, 50 L.Ed.2d 129 (1976).  See also Berkowitz, *Delaware Chills Freeze-Outs: A Critical Brief of Singer v. The Magnavox Company and Tanzer v. International General Industries, Inc.,* 3 Del. J.Corp.Law, 426, 427 (1978).  Certainly this Court should not foster an unnecessary damage forum because of any judicial limitation placed on the statutory appraisal procedure.  Rather, we should encourage this legislatively established valuation process to be open to generally accepted techniques of evaluation used in other areas of business and law.