William B. WEINBERGER, Plaintiff,

v.

UOP, INC., et al., Defendants.

Court of Chancery of Delaware,
New Castle County.

Submitted Sept. 7, 1979.
Decided Nov. 28, 1979.

William Prickett, of Prickett, Sanders, Jones, Elliott & Kristol, Wilmington, for plaintiff.

A. Gilchrist Sparks, III, of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendant UOP, Inc.

Robert K. Payson, of Potter, Anderson & Corroon, Wilmington, and Alan N. Halkett, of Latham & Watkins, Los Angeles, Cal., for defendant The Signal Companies, Inc.

R. Franklin Balotti, of Richards, Layton & Finger, Wilmington, for defendant Lehman Brothers Kuhn Loeb, Inc.

BROWN, Vice Chancellor.

In this class action suit attacking the fairness of the terms of a corporate merger whereby the defendant, The Signal Companies, Inc. ("Signal") acquired the all outstanding minority shares of the defendant UOP, Inc. ("UOP") in return for a cash payment per share to the former minority shareholders of UOP, the defendants Signal, UOP and Lehman Brothers Kuhn Loeb, Inc., ("Lehman Brothers") have moved to dismiss the complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

On such a motion, it is generally accepted that all inferences must be construed in favor of the plaintiff and the complaint may not be dismissed unless it appears to a reasonable certainty that the plaintiff would not be entitled to relief under any set of facts which could be proved in support of his claim. *Fish Engineering*

*Corporation v. Hutchinson*, Del.Ch., 162 A.2d 722 (1960). The well-pleaded allegations of the complaint are accepted as true for the purpose of such a motion. *Danby v. Osteopathic Hosp. Ass'n.*, Del.Ch., 101 A.2d 308 (1953), *aff'd*, Del.Supr., 104 A.2d 903 (1954). At the same time, such a motion does not concede pleaded conclusions of law or fact where there are no allegations of specific facts which would support such conclusions. *Cohen v. Mayor and Council of Wilmington*, Del.Ch., 99 A.2d 393 (1953); *Perry v. Missouri-Kansas Pipe Line Co.*, Del.Ch., 191 A. 823 (1937). This is of critical significance here.

The complaint filed in this action is one which purports to follow in the path of the guidelines set down by the Delaware Supreme Court in *Singer v. Magnavox Co.*, Del.Supr., 380 A.2d 969 (1977) and *Tanzer v. International General Industries, Inc.*, Del. Supr., 379 A.2d 1121 (1977). Its underlying premise is that Signal, as the majority shareholder of UOP at the time of the merger in question, breached the fiduciary duty of fair dealing that it owed to all minority shareholders of UOP because the cash-out terms of the merger were grossly inadequate insofar as they pertained to the minority and because the sole purpose of the merger was to benefit Signal by eliminating the minority from further participation in UOP's corporate enterprise. However, for the reasons set forth hereafter, I conclude that the complaint does not state a cause of action under the decisions in *Singer, Tanzer*, and, most recently, *Roland International Corporation v. Majjar*, Del. Supr., 407 A.2d 1032 (1979).

The precise question for decision may be stated as follows: Does a complaint state a cause of action against a majority shareholder for bringing about a cash-out merger of minority shareholders where it reveals on its face that the merger could not have been approved without an affirmative vote of a majority of the minority shareholders? This point would appear to be one of first impression. The pertinent facts alleged in the complaint may be summarized as follows.

The merger took place pursuant to 8 *Del.C.* § 251. It was approved by shareholder vote on May 26, 1978. Immediately prior to the vote, Signal was the owner of 50.5 per cent of the outstanding voting shares of UOP. Signal was thus in control of UOP. The plan of merger approved by the directors of Signal and UOP called for the merger of UOP into Sigco, Incorporated, a wholly-owned subsidiary of Signal, with UOP being the surviving corporation. Under the plan, the 49.5 per cent minority shareholders of UOP were to receive $21 per share for their stock interests. Signal would thereafter own all outstanding shares of UOP. The $21 per share price was attested as being fair by an opinion given by Lehman Brothers. Thus, from the outset, Signal possessed the majority voting power necessary to assure approval of the merger plan.

However, rather than to take advantage of this controlling position, Signal elected to structure the merger plan in such a fashion that its acceptance or rejection would depend upon the vote of the minority shareholders. Specifically, for the merger to receive shareholder approval, two things were required to happen under the agreement of merger entered into between the boards of directors of Signal and UOP. First, it was required that the plan of merger be approved by the majority vote of all those minority shareholders of UOP who actually voted on the matter, separate and apart from any votes cast by Signal. Second, assuming that a majority vote of all voting minority shareholders could be obtained, there was an additional requirement that the number of such affirmative minority votes, when added to the number of shares voted by Signal, comprise at least two-thirds of all outstanding shares of UOP—as opposed to two-thirds of the shares actually voted.

These conditions for approval of the merger were clearly spelled out in the proxy materials forwarded to UOP's shareholders. A copy of these proxy materials was attached to the complaint as an exhibit, and thereby made a part thereof. Rule

10(c) of the Rules of this Court states that ". . . a copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Thus, while the aforesaid terms of the merger vote were not specifically alleged in the complaint, they were made a part thereof through the attachment of the proxy materials as an exhibit.

When the vote of shareholders was taken, the minority shareholders who actually voted overwhelmingly approved the plan of merger by a 12 to 1 margin. This vote coupled with the shares voted by Signal easily satisfied the condition that the plan be approved by two-thirds of all outstanding UOP shares. While the precise number of the votes is established of record by means of an affidavit filed as part of the class action certification proceedings, and is thus not established by anything contained in the complaint, it is nonetheless alleged at paragraph 12 of the complaint that the plan of merger "was approved by more than two-thirds of the majority of shares other than those owned by Signal." Thus the allegations of the complaint when coupled with the content of the attached exhibit clearly reveal (1) that the merger could not have come about solely because of Signal's voting its majority interest, (2) that the merger could have been approved only by a majority vote of all voting minority shares, and (3) that the requisite approval by a majority of the minority shareholders was, in fact, obtained.

Against this factual backdrop, the complaint goes on to allege, in conclusory terms as approved in *Singer, Tanzer* and *Roland International*, as follows:

"13. The plan of merger was illegal in that it did not have a bonafide business purpose: its purpose was to eliminate the equity interest of the outside shareholders.

"14. The price of $21.00 per share forced on the outside shareholders was grossly inadequate."

■ The rationale underlying the decisions in *Singer* and *Tanzer* is deeply rooted in our corporate law. It is based upon the principle that whenever a majority shareholder, or a group of shareholders who combine to form a majority, undertakes to exercise an available statutory power so as to impose the will of the majority upon the minority, such action gives rise to a fiduciary duty on the part of the majority shareholder to deal fairly with the minority whose property interests are thus controlled. See *Allied Chemical & Dye Corporation v. Steel and Tube Co. of America*, Del.Ch., 120 A. 486 (1923).

In *Singer*, as reaffirmed in *Tanzer*, this principle was specifically applied in the context of a merger accomplished by the action of a majority shareholder. It was held in these decisions that a merger caused by a majority shareholder solely for the purpose of cashing out minority shareholders (*Singer*), or the effect of which is to eliminate all minority shareholders for cash even though a separate corporate purpose may exist (*Tanzer*), is, by the very nature of the action taken by the majority shareholder so as to become sole owner of the corporate enterprise, subject to scrutiny on the issue of whether or not the majority shareholder has fairly discharged its fiduciary duty owed to the minority, thus imposing the burden upon the majority shareholder to demonstrate the fairness of the action taken by it at a hearing to be conducted by this Court in the event that the fairness of the merger is challenged at the suit of a minority shareholder. Reduced to the arena of pleading, *Singer, Tanzer* and now *Roland International* hold that a complaint states a cause of action whenever it alleges such action taken by a majority shareholder in bringing about the accomplishment of a merger and couples this with general allegations, such as those made here, that the majority shareholder acted with no purpose other than to eliminate the minority and did so on a basis which was unfair to the minority in an economic sense.

■ But at the same time, the rationale of *Singer*, and the obligation imposed upon this Court to scrutinize the terms of the merger which devolves therefrom, is founded in the fiduciary duty which is activated

and which is imposed upon a majority shareholder when it undertakes to use its majority position in a manner which affects the interests of the minority. This is made abundantly clear by the following statement in *Roland International Corporation v. Najjar, supra,* at 407 A.2d 1034:

> "The unmistakable focus in *Singer* was on the law of fiduciary duty. See 380 A.2d at 976. Such a duty is owed by the majority shareholders (who have the power to control property and, indeed, corporate destiny) to the minority stockholders of the corporation when dealing with the latter's property. * * * The fiduciary duty is violated when those who control a corporation's voting machinery use that power to "cash-out" minority shareholders, that is, to exclude them from continued participation in the corporate life, for no reason other than to eliminate them."

■ Thus, in the context of an attack on a merger, a complaint states a cause of action under *Singer* when it sets forth facts that show a use of corporate voting machinery by a majority shareholder so as to mandate a preconceived result and couples these factual assertions with an allegation that the sole purpose of the action taken by the majority shareholder was to eliminate the minority and to do so on a basis which was unfair to the minority. Here, however, the complaint indicates that Signal has utilized its majority position, not to assure the accomplishment of the result it wanted, but so as to leave the critical decision to the vote of the minority shareholders.

I acknowledge that the complaint does indicate that the merger could not have been consummated without the vote of Signal since its vote was needed to meet the overall two-thirds requirement of the merger agreement. The complaint also warrants the necessary inference that Signal did, in fact, vote its shares so as to meet this requirement and did thereby use its voting power to bring about the merger which otherwise could not have been accomplished. But the distinction is that in voting in this fashion Signal did not use its majority position to accomplish the result since its majority vote was of no force and effect unless the plan of merger was first approved by the voting members of the 49.5 per cent minority and approved by enough of them so that their shares, when added to Signal's 50.5 per cent majority holdings, amounted to at least two-thirds of all UOP shares.

■ Since the complaint does not allege that Signal used its control position to determine the property rights of the minority shareholders, then, it would seem to follow logically that its act of voting its 50.5 per cent of the merger—which act was meaningless without the approval of the minority—did not constitute an act or use of the corporate voting machinery to determine the fate of the minority (or to control corporate destiny). Since the minority shareholders here were not powerless to stop the merger—as was the case in *Singer, Tanzer* and *Najjar*—and since there consequently was no use of its position by the majority shareholder which would give rise to the *Singer* duty to scrutinize the entire transaction so as to insure fair treatment of the otherwise vulnerable minority, then it would seem that the rationale of *Singer, Tanzer* and *Najjar* would not apply. In other words, stripped of any supportive factual allegations which would show an actual use of its controlling position by the majority shareholder for its own advantage, the allegations as to lack of purpose, freeze-out and grossly inadequate price have no sting. For this reason, I conclude that the complaint here fails to state a cause of action under *Singer* and its progeny.

In reaching this conclusion, I acknowledge that the complaint does attempt to saddle a fiduciary duty upon Signal which it claims to have been breached. The fiduciary duty charged, however, is that Signal had a duty to affirmatively take steps to prevent the merger because its purpose was to eliminate the outside shareholders and because the price was inadequate, and that it had a fiduciary duty not to enter into a conspiracy with others to accomplish such a merger.

In other words, the complaint charges that Signal, as well as the other defendants, violated a fiduciary duty owed to the minority by failing to take steps to prevent the consummation of the merger, the terms of which these same defendants proposed as being fair to the minority shareholders in the first place. However, this is but a backhanded manner of charging that the merger was unfair to the minority, and it is thus an attempt under *Singer* to place the burden on the defendants to show a fairness despite the fact that the minority shareholders who considered the matter were satisfied with the merger terms by an overwhelming margin. To simply imply that the merger was unfair does not overcome the fact that it was the act of minority shareholders, and not that of Signal, that worked an approval of the merger. Even assuming *arguendo* that the merger was unfair to the minority, the fact that Signal voluntarily surrendered the voting power it had to assure its acceptance means that there was no act by Signal in securing its approval which would compel it to come forth and establish its fairness under the fiduciary duty rationale of *Singer*.

■■■ As I see it, under *Singer*, a complaint does not have to allege the particulars of why a merger is unfair so long as it alleges a use of its position by a majority shareholder to cash-out the minority on inadequate terms for no sufficient business purpose other than to get rid of them. Such general allegations coupled with factual assertions showing a use of the majority position is sufficient to state a cause of action and to place the burden on the majority shareholder, as part of its fiduciary duty, to prove the fairness of the merger terms as opposed to requiring the plaintiff to prove that they were unfair. But where the complaint fails to charge a use of its majority position by a shareholder to bring about a predetermined result affecting the minority, and simply charges, in essence, that the terms of the merger proposed by the majority shareholder were unfair, then it seems to me that the burden should then be on the plaintiff to allege and prove the unfairness, or to allege fraud or some other basis for condemning the terms of the merger plan.

This point is, I think highlighted by the diversionary position taken by the plaintiff in resisting the motion to dismiss. While now he admittedly finds it difficult to quarrel with the argument that the complaint fails to state a cause of action under *Singer*, he nonetheless points to the discovery which has taken place and says that it is replete with indications that there was no negotiation whatever of the cash-out price between UOP and Signal, that UOP's board was dominated by Signal, that the fairness opinion obtained from Lehman Brothers as to the price of $21 per share was simply a rubber-stamp approval of the figure proposed by Signal, that Lehman Brothers was not impartial in giving its opinion, and that in essence the whole scheme was orchestrated by Signal, in conspiracy with UOP and Lehman Brothers, to deceive the minority shareholders into giving their overwhelming approval to the merger plan. In short, plaintiff now says that as a result of discovery he has facts which will support a cause of action. The purported facts on which he would now rely, however, sound in fraud, deception and misrepresentation. Yet the present complaint contains no allegations, factual or otherwise, as to fraud or misrepresentation. Nor does it contain sufficient factual allegations to support a claim of conspiracy. It is premised strictly on an alleged violation of a fiduciary duty owed by a majority shareholder. And it is the complaint in this form that the defendants' motion attacks.

Accordingly, I am convinced that the complaint fails to state cause of action and that it should be dismissed.

■■■ In so ruling, however, I hasten to add that by no means do I intend to insinuate that a merger can be rendered immune from attack by the simple device of structuring the merger agreement so as to require that it be approved by a majority of the minority shareholders. I do think, however, that where the terms of the merger are ratified and approved by a majority of

those shareholders who otherwise would have been powerless to stop it, and when approval is made to depend on the minority vote, then the *Singer* rationale is inapplicable and the burden should shift to the complaining member of the minority to show fraud, misrepresentation, or other conduct attributable to the majority shareholder which would warrant setting aside the affirmative vote of the minority for their own benefit. Compare *Michelson v. Duncan*, Del.Supr., 407 A.2d 211 (1979).

If a single shareholder has long since lost his common law right to veto a merger, *Singer v. Magnavox Co., supra,* at 380 A.2d 978, I see no reason why a single minority shareholder should now be able to invoke a fairness hearing and impose the burden upon a majority shareholder to prove the fairness of the terms of a merger in a possible hypothetical situation wherein the majority shareholder has not used its majority position to approve the plan and where the success of the merger is made to depend upon the approval of the minority shareholders, all of whom save one have given their assent. Yet this would seem to be a potential result if the complaint here were held to state cause of action.

The motion to dismiss the complaint in its present form will be granted. An appropriate form of order may be submitted.