Leon **COLEMAN** and Thelma
Coleman, Plaintiffs,

v.

Aaron **TAUB**, Gloria Taub, Taub Builders, Inc. and Taub Builders, Inc. Employees Profit-Sharing Plan, Defendants.

Civ. A. No. 78–390.

United States District Court,
D. Delaware.

Opinion Jan. 29, 1980.

On Motion For Reargument April 1, 1980.

Martin I. Lubaroff, Richards, Layton & Finger, Wilmington, Del., for plaintiffs; Alan L. Spielman, and Timothy A. Manzone, of Alan L. Spielman, Ltd., Philadelphia, Pa., of counsel.

Paul P. Welsh and Judy Oken Hodas, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendants.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

Posed for decision are defendants' motion to dismiss Counts V and X of plaintiffs' complaint and plaintiffs' motion for summary judgment on Count X. Both motions turn on the validity of a corporate merger effectuated during the pendency of this litigation. For the reasons set forth below, defendants' motion will be denied and plaintiffs' motion will be granted.

### FACTS

In February, 1978, plaintiff Leon Coleman's ("plaintiff" or "Coleman") employment with defendants Taub Builders, Inc. ("Old Taub") and Aaron Taub was terminated. At that time, defendants notified Coleman of their intention to repurchase his shares in Old Taub (Coleman possessed 10 shares, equal to 1% of outstanding shares), pursuant to a provision of an employment agreement between Coleman and defendants. Coleman's shares were not, however, repurchased by the corporation. Coleman brought suit against defendants, asserting not only contractual claims relating to the termination of his employment, but also a derivative claim on behalf of the corporation against Aaron Taub, President of Old Taub and his wife, defendant Gloria Taub, Secretary of Old Taub, for breach of fiduciary obligations. This count (Count V) of the complaint alleged, *inter alia*, that the Taubs caused the transfer of Old Taub's major asset to themselves for inadequate consideration.

Following the commencement of this litigation, Aaron Taub transferred all his stock in Old Taub (990 shares, equal to 99% of outstanding shares) to a newly-formed corporation, defendant New Taub Builders, Inc. ("New Taub") in exchange for 100% of the shares of New Taub. Thus, New Taub became a 99% owner of Old Taub, with Coleman holding the remaining 1% of outstanding shares. Effective May 4, 1979, Old Taub was merged into New Taub, pursuant to the Delaware short-form merger statute, 8 *Del.C.* § 253. Under the terms of this merger, Coleman's shares in Old Taub

were cancelled and he received no stock in New Taub. He was offered cash for his Old Taub stock at $100 per share. Immediately upon the effectuation of the merger, New Taub Builders, Inc. changed its name to Taub Builders, Inc. Coleman then filed a supplemental complaint seeking to set aside the merger as a violation of fiduciary obligation owed to him by defendants (Count X).

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants have filed a motion to dismiss Count X of plaintiff's complaint for failure to state a claim upon which relief can be granted and Count V for mootness, arguing that since plaintiff is no longer a shareholder of Old Taub, he cannot bring a derivative suit on its behalf. Since the Court and the parties have looked to matters outside the pleadings, defendants' motion will be treated as a motion for summary judgment and, for the reasons set forth below, will be denied.

The well established standard for deciding a motion for summary judgment was expressed by the Third Circuit in *Scott v. Plante,* 532 F.2d 939 (3d Cir. 1976):

> Summary judgment may only be granted if, taking the non-movant's allegations as true and drawing all inferences in his favor, the court is convinced from its review of the evidential sources available that no genuine issue as to a material fact remains for trial, and that the moving party is entitled to judgment as a matter of law.

532 F.2d at 945.

The Court will consider the cross-motions for summary judgment seriatim, taking the respective non-movant's allegations as true.

Count X alleges that the Old Taub-New Taub merger had "the sole purpose of 'freezing out' plaintiff . . . at a merger price which was unfair to plaintiff. . . . ," (Doc. No. 64, ¶ 84) and thus constituted a breach of defendants' fiduciary obligation to him. Defendants contend that Coleman cannot bring an action challenging the merger, since the statutory ap-

praisal procedure under 8 *Del.C.* § 262 is the exclusive remedy available to him. Defendants also assert that as a result of paragraph 11 of Coleman's employment agreement,[1] he possessed "no legally protected right in his shares . . . beyond a right to be paid fair value." (Doc. No. 88, p. 11).

■ In *Singer v. Magnavox Co.*, 380 A.2d 969 (Del.1977), the Delaware Supreme Court held that with regard to mergers accomplished through the Delaware long-form merger statute, 8 *Del.C.* § 251, "use of corporate power solely to *eliminate* the minority is a violation of [fiduciary] duty," and that "[a complaint that such a violation took place] states a cause of action for violation of a fiduciary duty for which the Court may grant such relief as it deems appropriate under the circumstances." 380 A.2d at 980 (emphasis in original). This holding was held fully applicable to mergers under 8 *Del.C.* § 253 in *Roland International Corp. v. Najjar*, 407 A.2d 1032 (Del.1979). In *Singer* and *Roland*, the court rejected the argument, asserted here by defendants, that the plaintiff's access to the appraisal proceeding barred a cause of action for breach of fiduciary duty. 380 A.2d at 977; 407 A.2d at 1036.

■ Defendants second contention must also fail. While defendants may have had the right to repurchase plaintiff's shares of Old Taub following his termination, it is uncontroverted on the record that they did not do so and that Coleman remained a minority shareholder until his shares were cancelled pursuant to the terms of the merger. This is unlike *Weinberger v. UOP, Inc.*, 409 A.2d 1262 (Del.Ch., 1979), in which the minority shareholders agreed to the merger. While Coleman may have agreed

to a cash-out in accordance with the procedure outlined in paragraph 11, he in no way can be considered to have yielded his right to object to a merger that allegedly constituted a breach of fiduciary obligations owed to him.

Defendants' motion to dismiss Count V as moot must also be denied. Defendants concede that success on this motion rests upon the dismissal of Count X, for plaintiff loses his standing to raise his derivative claims only if the merger cancelling his shares in Old Taub is upheld. *See Heit v. Tenneco*, 319 F.Supp. 884 (D.Del.1970).

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

■ Plaintiff's complaint alleges that the merger of Old Taub into New Taub was accomplished for the sole purpose of eliminating him as an Old Taub shareholder and thus defendants violated their fiduciary duty owed to him. Defendants contend that a valid business purpose for the merger existed and therefore summary judgment is not warranted.

In *Roland*, the Delaware Supreme Court held that "the fiduciary duty is violated when those who control a corporation's voting machinery use that power to 'cash out' minority shareholders, that is, to exclude them from continued participation in the corporate life, for no reason other than to eliminate them." *Roland*, 407 A.2d at 1034. The court went on to state: "even when a parent corporation has a *bona fide* purpose for merging with its subsidiary, the minority shareholders of the subsidiary are entitled to a judicial review for 'entire fairness' as to all aspects of the transaction. [Citation omitted.] In other words, the fiduciary

---

1. Paragraph 11 of the Agreement provides:

 11. Upon the termination of Coleman's employment with Builder for any reason whatsoever, then Builder shall have the privilege of purchasing all of Coleman's stock in Builder on the terms hereinafter set out. Builder shall give to Coleman or to his personal representative notice of its intention to exercise this right of purchase by registered or certified mail at Coleman's last known address, within ninety days of the termination of Coleman's employment. The price to

 be paid by Builder for such shares shall be agreed upon between Builder and Coleman, or between Builder and Coleman's personal representative. If no agreed price can be reached by the parties, then it is agreed that capital stock of Coleman shall be valued by three impartial appraisers, one to be selected by each of the said parties, and the two appraisers so selected shall then select a third appraiser. The decision of the three appraisers shall be binding upon the parties hereto. . . .

duty exists even if the majority has a *bona fide* purpose for eliminating the minority in that case, the duty of the majority is to treat the minority fairly." 407 A.2d at 1034–35. *See also Tanzer v. International General Industries, Inc.*, 379 A.2d 1121, 1125 (Del.1977).

At a previous hearing before this Court on a discovery motion, counsel for defendants stated the purpose for the merger:

> This merger was done for the purposes of permitting the enterprise to continue in a corporate vehicle in which Mr. Coleman . . . is not a stockholder . . .; and for the purpose of thereby mooting the derivative claim asserted in this action, and thereby saving substantial legal costs to all concerned; and, for the purpose . . . of effectuating the contractual right to cash Mr. Coleman out, which, under the agreement on which he sues here, we say that we had. Those were the purposes."

Doc. No. 111.

Plaintiff contends that this statement demonstrates conclusively that the sole purpose of the merger was to eliminate him from the corporation. Defendants respond that "the termination of fundamentally abusive derivative litigation" was behind the merger and that this was "a proper business purpose." (Brief, p. 8). Defendants cite *Kaplan v. Goldsamt*, 380 A.2d 556, 569 (Del.Super.1977), in support of their assertion. However, *Kaplan* involved a derivative suit challenging as corporate waste a corporation's purchase of the shares of a director for the purpose of removing the director and his disruptive influence from the corporation. The court stated:

> The use of corporate funds to acquire the shares of a dissident stockholder faction is a proper exercise of business judgment where it is done to eliminate what appears to be a clear threat to the future business of the existing, successful business policy of a company and is not accomplished for the sole or primary pur-

pose of perpetuating the control of management.

380 A.2d at 568–69. *Kaplan* is distinguishable from the instant case on several grounds. First, the corporation in *Kaplan* defended against the charge of improper expenditures by asserting that its action reduced overall costs by ending costly and time-consuming fights over policy. This is a far cry from the assertion of the defendants in the instant case that the saving of litigation costs as a result of the termination of a derivative suit brought on behalf of the corporation constitutes a proper purpose for a merger that results in the elimination of minority shareholders. Second, the defendants have not even attempted to demonstrate that their action was "done to eliminate a clear threat to the future business" of Old Taub. In Count V, plaintiff alleges that the individual defendants transferred corporate assets to themselves, to the detriment of the corporation. While the termination of the litigation and the elimination of Mr. Coleman as a participant in Old Taub would no doubt be beneficial to Mr. Taub's interests, I conclude that neither Old Taub nor New Taub [2] have met their burden of demonstrating a *bona fide* business purpose for the merger.

Thus, even assuming, as the Court must on this motion, that the defendants had a purpose other than the elimination of Mr. Coleman from Old Taub, they had no *bona fide* business purpose, as is required by *Singer, Tanzer* and *Roland*. The plaintiff's allegation that the merger was accomplished for no *bona fide* business purpose and for no reason other than to eliminate him from the corporation stands uncontradicted.

Defendants contend that summary judgment is inappropriate since "neither party has placed before the court evidence as to the fairness . . . of the merger price." Doc. No. 103, p. 9. *Singer* and *Roland*, however, have apparently held that the effectuation of a merger for the sole

2. In *Tanzer*, the Delaware Supreme Court held that the *bona fide* business purpose of the parent corporation involved in a merger could jus- tify the merger if "entire fairness" is shown. The defendants have not pointed to any possible business purpose of New Taub.

purpose of eliminating minority shareholders constitutes a breach of fiduciary duty without regard to the fairness of the price. In *Singer*, the court quoted the following language from *Bennett v. Breuil Petroleum Corp.*, 34 Del.Ch. 6, 99 A.2d 236 (1953):

action by majority stockholders having as its primary purpose the 'freezing out' of a minority interest is actionable without regard to the fairness of the price.

380 A.2d at 979.

In both *Singer* and *Roland*, the court appeared to stress that the fairness of the merger will not be scrutinized unless the defendants meet their burden of demonstrating a *bona fide* purpose other than a freeze-out. *Singer*, 380 A.2d at 980; *Roland*, 407 A.2d at 1034–35.[3] *See also Young v. Valhi, Inc.*, 382 A.2d 1372 (Del.Ch.1978). A recent Chancery Court decision, *Weinberger v. UOP, Inc.*, 409 A.2d 1262 (Del.Ch. 1979), casts some doubt, however, as to whether this was indeed the holding of *Singer* and *Roland*. In that case, Vice Chancellor Brown stated:

A complaint states a cause of action whenever it alleges such action taken by a majority shareholder in bringing about the accomplishment of a merger and couples this with general allegations . . . that the majority shareholder acted with no purpose other than . to eliminate the minority *and did so on a basis which was unfair to the minority in an economic sense.*

At 1265 (emphasis added).

 Under *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a district court hearing a diversity case is to follow state law as announced by the highest court of the state. When the highest state court has not yet addressed an issue, lower state court decisions may be looked to for guidance as to how the higher court would rule. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); *National Surety Corp. v. Midland Bank,* 551 F.2d 21, 29 (3d Cir. 1977). In this case, however, the Court believes the Delaware Supreme Court has squarely addressed the issue discussed in *Weinberger* and has concluded that the fairness of the merger price is not analyzed where, as here, it is found that the sole purpose of a merger is to eliminate minority shareholders. Therefore, the Court does not regard *Weinberger* as controlling.

Under the Delaware Supreme Court's decisions, a merger cannot be accomplished for the sole purpose of eliminating minority shareholders. While this rule of law makes it extremely difficult, if not impossible, for majority interests to rid themselves of unwanted minority interests, this Court is duty-bound to follow Delaware law as established by its highest court. It may well be, however, that in the future, Vice Chancellor Brown's focus in *Weinberger* on abuse of corporate power and machinery by the majority, rather than on the purpose for the merger will come to be the rule of law enunciated by the Delaware Supreme Court. Such a rule would not change the result in the instant case, where the majority shareholder has used his position to foreclose a claim raised against himself and other corporate officers by the minority shareholder.

*REMEDY*

Plaintiff prays for an order requiring that the merger between Old Taub and New Taub be rescinded. While "a merger once accomplished is difficult to undo," *Kemp v. Angel,* 381 A.2d 241 (Del.Ch.1977), the *Singer* court stressed that a court reviewing the propriety of a merger under the principles established in that case should "grant such relief as equity may require." *Singer, supra,* at 980. *See also Singer, supra,* at 982 (McNeilly, J., concurring) ("[u]pon finding a breach of the fidu-

---

**3.** The commentators are also in agreement with this interpretation of *Singer. See* Comment, *Delaware Chills Freeze-Out: A Critical Brief of Singer v. The Magnavox Company and Tanzer v. International General Industries, Inc.,* 3 Del. J.Corp.L. 426, 450 (1978); Rothschild, *Cash Mergers: A Current View,* 4 Del.J.Corp.L. 708, 711 (1979); Terrell, *Planning a Cash Merger After Singer,* 4 Del.J.Corp.L. 720, 720 (1979); Brudney & Chirelstein, *A Restatement of Corporate Freezeouts,* 87 Yale L.J. 1354, 1363 (1978).

ciary duty owed, the Court must then grant such relief as the circumstances require, by injunction, appraisal, damages, or other available equitable relief, if any, keeping in mind, however, the continuing legislative approval of mergers and the judicially mandated avoidance of their disruption by dissenting stockholders.").

■ The rescinding of a consummated merger may be unusual, but it is not outside the scope of a court's equitable powers. In *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), the Supreme Court, in discussing the remedies available to a court after it has found a corporate merger to be tainted by a materially misleading proxy solicitation, stated:

In devising retrospective relief for violation of the proxy rules, the federal courts should consider the same factors that would govern the relief granted for any similar illegality or fraud. . . . Possible forms of relief will include setting aside the merger or granting other equitable relief . . . . In selecting a remedy the lower courts should exercise "the sound discretion which guides the determinations of courts of equity."

396 U.S. at 386, 90 S.Ct. at 622. *See also Ramsburg v. American Investment Co. of Illinois*, 231 F.2d 333 (7th Cir. 1956).

■ The facts presented in this case, including the plaintiff's lack of access to pre-merger injunctive relief,[4] and the plaintiff's pending derivative claim which can only be raised by a shareholder, warrant a rescission of the merger. Moreover, New Taub changed its name to Taub Builders, Inc., the same name Old Taub used, immediately upon the merger becoming effective, mak-

ing it likely that the public has never realized it has dealt with two separate corporate entities. Another consideration in the decision to grant this relief is the fact that the merger was enacted as a litigation tactic designed to moot plaintiff's derivative claims. Finally, it is noted that the Court has jurisdiction over all parties to the merger, as they are defendants in this action.[5]

An order will be entered granting plaintiffs' motion for summary judgment, denying that of defendants, and requiring defendants to rescind the May 4, 1979 merger between New Taub and Old Taub, and to reissue ten shares of stock in Old Taub to plaintiff. The issues of damages, if any, and attorney's fees will be decided upon application at an appropriate time.

## ON MOTION FOR REARGUMENT

Defendants have presented a motion for reargument on this Court's Opinion and Order of January 29, 1980 denying defendants' motion for summary judgment, granting plaintiffs' motion for summary judgment on Count X, and requiring defendants to rescind a merger between Taub Builders, Inc. ("Old Taub") and New Taub Builders, Inc. ("New Taub") and to reissue ten shares of stock in Old Taub to plaintiff Leon Coleman ("plaintiff" or "Coleman").[1] The Court held that the merger, accomplished pursuant to 8 *Del.C.* § 253, violated the fiduciary duty owed by defendants to plaintiff in that it was implemented solely to "cash out" Coleman, the minority shareholder in Old Taub, and not for a valid business purpose. The Court further held that paragraph 11 of the employment agreement between plaintiff and Old Taub,

4. Under the Delaware short-form merger statute, 8 *Del.C.* § 253, minority shareholders of the corporation to be merged into the corporation that holds at least 90% of its outstanding shares need not be notified prior to the accomplishment of the merger. Similarly, approval by the shareholders of the subsidiary corporation is not required.

5. *See Ramsburg v. American Investment Co. of Illinois*, 231 F.2d 333 (7th Cir. 1956). *Cf. In the Matter of Combined Metals Reduction Co.*, 557 F.2d 179, 189 (9th Cir. 1977); *Sawyer v. Pio-*

*neer Mill Co.*, 300 F.2d 200, 202 (9th Cir. 1962); *Fink v. Continental Foundry & Machine Co.*, 240 F.2d 369, 373 (7th Cir. 1957); *Sobel v. Whittier Corp.*, 195 F.2d 361, 363 (6th Cir. 1952); *Loc. Joint Exec. Bd., AFL–CIO v. Hotel Circle, Inc.*, 419 F.Supp. 778, 784 (S.D.Cal. 1976).

1. The facts are set forth fully in the Court's previous Opinion and will be noted herein only where necessary to an understanding of the resolution of this motion.

which gave Old Taub the "privilege" of purchasing all of plaintiff's shares in Old Taub in accordance with the procedure set forth in the agreement "upon the termination of Coleman's employment with [Old Taub] for any reason whatsoever . . ." did not preclude the relief sought by plaintiff. In this motion, defendants contend the Court erred in so holding and that reargument is required. For the reasons set forth below, defendants' motion for reargument will be denied.

■ Defendants first contend that "Coleman has no right in equity to be treated as the owner of the shares he inequitably retained at the time of the merger." (Doc. No. 117 at 4–5). This contention is premised upon the assumption, which defendants contend the Court is required to make on plaintiff's motion for summary judgment, that Coleman wrongfully refused to be cashed out in accordance with his employment agreement. (Doc. No. 117 at 4–6). While the Court must, on a motion for summary judgment, take the non-movant's allegations as true and draw all inferences in his favor, *Scott v. Plante*, 532 F.2d 939 (3d Cir. 1976), defendants have put forth no record facts, either in connection with the summary judgment motion or this motion, which support their assertion that Coleman wrongfully refused to be cashed out. In contrast, Coleman's uncontradicted affidavit states that after receiving the February 15, 1978 letter of termination, which provided Coleman with notice of Old Taub's "intention to repurchase" his shares, he was never again contacted by defendants concerning the acquisition of his shares pursuant to the agreement. Coleman further states that defendants neither offered him a price for his shares, nor discussed with him the selection of an appraiser as set forth in the agreement. (Doc. No. 97, Affidavit of Leon Coleman). Thus, the Court cannot accept defendants' mere allegations and assume that Coleman inequitably retained his shares in Old Taub prior to the merger.

■ Defendants further contend they have the right to specific performance of the repurchase provision of the agreement and that, therefore, equity dictates that the merger not be condemned as improper. This argument was addressed by the Court in its Opinion, but will be discussed here, as well. It bears repeating that defendants' right to specific performance of their agreement with Coleman is not before the Court; whether defendants may, at this date, seek to enforce their "privilege" to repurchase Coleman's shares, or whether they are barred from doing so by laches, waiver, "unclean hands," or some other defense need not be determined. Defendants apparently chose not to seek specific performance of the agreement but rather to cash out Coleman's shares through a merger. As a shareholder in Old Taub at the time of the merger, Coleman was owed the exercise of fiduciary obligations by corporate officers. Therefore, the employment agreement repurchase provision does not preclude entry of summary judgment in favor of plaintiff.

■ Defendants also challenge the Court's holding that the merger was not accomplished for a valid business purpose, as required by *Singer v. Magnavox Co.*, 380 A.2d 969 (Del.1977), and *Roland International Corp. v. Najjar*, 407 A.2d 1032 (Del. 1979). They first contend that the purpose of "effectuating the contractual right to cash Mr. Coleman out" (Doc. No. 111) was a proper business purpose. Their sole authority for this proposition is *St. Louis Union Trust Co. v. Merrill, Lynch, Pierce, Fenner & Smith*, 562 F.2d 1040 (8th Cir. 1977). In that case, the court upheld the enforcement of a repurchase option provision against a challenge based on federal securities law and against state law claims of breach of fiduciary duty. In so holding, the court observed that repurchase options "have been recognized as serving a number of legitimate business purposes, including restrictive ownership of corporate stock, and have been generally upheld by the courts." 562 F.2d at 1046 n.9. In addressing the assertion that enforcement of the repurchase option constituted a breach of fiduciary duty, the court upheld "the company's

right to exercise a repurchase option which was specifically assented to by the stockholder, consistently exercised by the company *and supported by lawful business purposes.*" 562 F.2d at 1055 n.23 (emphasis added). Defendants assert that "[s]ince 'the contractual right to cash Mr. Coleman out' arises from just such a provision having 'legitimate business purposes,' it follows inexorably that 'effectuating' the legitimate business purposes of Old Taub's contract right is itself a 'legitimate business purpose' of Old Taub." (Doc. No. 117 at 8).

*St. Louis Union Trust Co.,* however, is inapposite; it simply upheld the enforcement of stock repurchase agreements as generally having legitimate business purposes. In the instant case, Old Taub did not enforce its contractual stock repurchase provision, but instead unilaterally resorted to the merger device which had the incidental effect of avoiding its obligations under the repurchase agreement.[2] Under this circumstance it cannot be said the merger effectuated "the contractual right to cash Mr. Coleman out." Instead, the merger had the effect of cashing out Coleman independent of, without reference to, and in violation of paragraph 11 of Coleman's employment agreement.

Accordingly, since Old Taub was not in fact enforcing its contractual rights, it cannot be said that effectuating its rights under the employment agreement was a valid business purpose of the merger. A "contractual right" to purchase Coleman's shares cannot provide the business purpose for freezing out Coleman through a merger, in a manner in which the corporation avoids its contractual obligations by unilaterally determining the value of Coleman's shares.

Defendants' second contention with respect to the purpose behind the merger is that the mooting of plaintiff's derivative action and the resultant saving of "substantial legal costs to all concerned" constitutes a valid business purpose for the merger. This contention is also not persuasive.

Plaintiff's derivative action alleges that defendants Aaron Taub, a 99% shareholder and an officer and director of Old Taub ("Taub"), and his wife, Gloria Taub, an officer and director of Old Taub, caused corporate property to be transferred to themselves for inadequate consideration. To accomplish the merger, and thereby eliminate plaintiff as a shareholder and moot his derivative suit, Taub caused a new corporation, New Taub, to be formed and transferred all his shares in Old Taub to New Taub. Old Taub was then merged into New Taub pursuant to 8 *Del.C.* § 253. Pursuant to the merger, Coleman's shares in Old Taub were cancelled and he was offered cash on terms established by the corporations.

Defendants cite no authority in support of their contention other than *Kaplan v. Goldsamt,* 380 A.2d 569 (Del.Super.1977), which was distinguished by the Court in its Opinion. While the creation of a newly formed subsidiary for the purpose of facilitating a merger may not alone be sufficient to invalidate the merger, see *Grimes v. Donaldson, Lufkin & Jenrette, Inc.,* 392 F.Supp. 1393, 1403 (N.D.Fla.1974), it has been suggested that the courts carefully scrutinize the purposes behind mergers accomplished in such a manner. See Terrell and Ranney-Marinelli, *What Constitutes a Valid Purpose for A Merger?,* 51 *Temple L.Q.* 852, 868 (1978). The Court declines to revise its previous holding that, in light of the circumstances surrounding the merger, especially the role played by Taub, a defendant in the derivative suit, the termination of plaintiff's derivative suit was not a *bona fide* business purpose for the merger.

This holding is supported by analogous case law developed with respect to the "business judgment" rule of corporate law. Under this rule, where a *disinterested* majority of the board of directors, in the good faith exercise of its business judgment, determines that a derivative action is not in the best interests of the corporation, the

---

2. Under paragraph 11, the price to be paid by Old Taub for Coleman's shares was to be negotiated by the parties. If an agreement could not be reached, Coleman's shares were to be valued by three impartial appraisers.

courts should accept that judgment and not entertain the derivative action. Recent expressions of this rule are found in *Abbey v. Control Data Corp.*, 603 F.2d 724 (8th Cir. 1979), *cert. denied,* —— U.S. ——, 100 S.Ct. 670, 62 L.Ed.2d 647 (1980) (applying Delaware law); *Galef v. Alexander*, 615 F.2d 51 (2d Cir. 1980); and *Maldonado v. Flynn*, 477 F.Supp. 1007 (S.D.N.Y. 1980) (applying Delaware law). Permitting the defendants in the instant case to terminate plaintiff's derivative action by sanctioning the merger designed to accomplish that result would be contrary to the Delaware law and policy against entrusting decisions as to whether the interest of the corporation is served by a derivative action to the very individuals whose actions are challenged in the suit.

Finally, defendants have referred the Court to a recent Delaware Chancery Court decision, *Temple v. Combined Properties Corporation*, 410 A.2d 1375 (Del.Ch., 1979). That case does not compel a different result in the instant matter. The Chancellor merely held that there was a material factual dispute as to whether a valid business purpose existed for the challenged merger. This Court has held that, as a matter of law, no valid purpose existed for the Old Taub—New Taub merger. Moreover, to the extent that *Temple* places the burden upon the plaintiff to establish that no valid purpose existed for the merger, it would appear to be inconsistent with *Roland. Compare Temple*, at 1378 with *Roland*, 407 A.2d at 1037.

An Order will be entered denying defendants' motion for reargument.